855 A.2d 682

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Salvador Carlos SANTIAGO, Appellant.**

Supreme Court of Pennsylvania.

Submitted Feb. 7, 2000.

Decided Aug. 17, 2004.

Reargument Denied Oct. 29, 2004.

48

54

56

Robert Brett Dunham, Christina Swarns, Philadelphia, for Salvador Carlos Santiago.

Sally K. Kaye, Pittsburgh, for Com. of PA.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

### *OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

Chief Justice CAPPY.

Salvador Carlos Santiago ("Appellant") appeals from the denial of his petition filed pursuant to the Post Conviction

Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* For the reasons that follow, we affirm.[1]

On January 17, 1985, Appellant robbed and murdered Patrick Huber ("Huber") at the Minuteman Press, a print shop located on the South Side of Pittsburgh. Cindy Pasternak ("Pasternak"), a co-employee of Huber's, observed Appellant in the Minuteman Press during the commission of the crimes.

Appellant was tried before a jury on charges related to this murder. His defense was that he was insane at the time of the commission of the crime. The jury rejected this defense and found Appellant guilty of, *inter alia,* first degree murder.[2] After penalty phase, the jury found that the aggravating circumstances outweighed any mitigating circumstances and fixed the penalty for the murder conviction at death.

On appeal, this court found that Appellant's Fifth Amendment right to counsel had been violated when Appellant invoked his right to counsel with regard to a different offense, but was questioned by police concerning the murder of Huber. *Commonwealth v. Santiago,* 528 Pa. 516, 599 A.2d 200 (1991) ("*Santiago I* "). We therefore vacated the judgment of sentence and remanded the matter for a new trial.

A new trial was held in September of 1992. Rather than once again presenting a mental defect defense, a defense which failed to persuade the jury in *Santiago I,* Appellant's guilt phase counsel at the second trial attempted to establish to the jury that reasonable doubt existed in this matter. The jury rejected this defense, and Appellant was found guilty of first degree murder and robbery.[3]

A penalty phase hearing then commenced at which Appellant was represented by new counsel. The jury found three aggravating circumstances: the killing was committed during the perpetration of a felony;[4] Appellant had a significant

1. Where post-conviction relief has been denied in a death-penalty case, the matter is directly reviewable by this court. 42 Pa.C.S. § 9546(d).

2. 18 Pa.C.S. § 2501(a).

3. 18 Pa.C.S. § 3701(a)(1)(i).

4. 42 Pa.C.S. § 9711(d)(6).

history of felony convictions involving the use or threat of violence to the person; [5] and Appellant had been convicted of another federal or state offense committed either before or at the time of the offense at issue for which a sentence of life imprisonment or death was imposable.[6] The jury also found two mitigating circumstances: Appellant was under the influence of extreme mental or emotional disturbance; [7] and Appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.[8] The jury determined that the aggravating circumstances outweighed the mitigating circumstances and fixed the penalty at death.

Appellant, represented by a new attorney, appealed to this court. We affirmed. *Commonwealth v. Santiago*, 541 Pa. 188, 662 A.2d 610 (1995) ("*Santiago II* ").

In August of 1996, represented by yet another attorney, Appellant filed the instant PCRA petition raising a myriad of claims. Via an order dated December 31, 1996, the PCRA court declared that it was denying relief without a hearing on all claims except for Appellant's claims that Appellant was incompetent at the time of trial and that trial counsel was ineffective for failing to investigate, develop and produce evidence of his incompetence. The PCRA court held hearings regarding Appellant's competency at the time of trial. The PCRA court subsequently denied relief on the remaining issues.

Appellant then filed the instant appeal with this court. For the reasons that follow, we affirm the order of the PCRA court.

■ The first claim that must be addressed is Appellant's contention that the trial and PCRA proceedings were conducted by a biased jurist and therefore Appellant's constitutional rights were violated. Appellant contends that he is entitled to

5. 42 Pa.C.S. § 9711(d)(9).

6. 42 Pa.C.S. § 9711(d)(10).

7. 42 Pa.C.S. § 9711(e)(2).

8. 42 Pa.C.S. § 9711(e)(3).

either a new trial, a new PCRA hearing before a different jurist, or an evidentiary hearing at which this issue of alleged bias can be explored.

This claim, however, was not raised in Appellant's PCRA petition. In an apparent effort to explain this failing, Appellant asserts that he did not know of the facts establishing the judge's alleged bias until after the jurist had disposed of the PCRA petition.

■ Regardless of the reasons for Appellant's belated raising of this issue, it is indisputably waived. We have stressed that a claim not raised in a PCRA petition cannot be raised for the first time on appeal. We have reasoned that "[p]ermitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA." *Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33, 52 (2002). The proper vehicle for raising this claim is thus not the instant appeal, but rather is a subsequent PCRA petition. *See Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585 (2000).

■ Appellant next contends that a hearing should have been held on all the issues he presented in his PCRA petition, and not just on the claim that he was incompetent to stand trial. The Rules of Criminal Procedure provide that a PCRA court judge is to hold a hearing where a PCRA petition raises any material issues of fact. Pa.R.Crim.P. 908(A)(2); *see also Commonwealth v. Banks,* 540 Pa. 143, 656 A.2d 467, 473 (1995). Where a PCRA court determines that a hearing is required as to only some, but not all, of the issues raised in the PCRA petition, a hearing may be limited as to those issues; there is no requirement that a hearing be held as to all of the issues raised in the PCRA petition. *See Commonwealth v. Carpenter,* 555 Pa. 434, 725 A.2d 154, 170 (1999).

In the matter *sub judice,* the PCRA court determined that there were issues of material fact only as to the claim that Appellant was incompetent to stand trial. The PCRA court found that it could resolve the other issues on the record presently before it. Appellant's scant argument as to this

issue, which amounts to nothing more than the bald claim that there were material issues of fact relating to his other claims, does not establish that the PCRA judge improperly refused to hold a hearing on the remaining issues.

We now turn to examining Appellant's assertion that he was incompetent at the time of trial. At the outset, we note that the issue of Appellant's competency was not raised at trial or on appeal. Usually, a claim that is not raised at trial or on appeal is waived. *Commonwealth v. Pirela*, 556 Pa. 32, 726 A.2d 1026, 1030 (1999). Yet, the issue of whether a defendant was competent to stand trial is an exception to that rule. We have stated that it would be " 'contradictory to argue that a defendant may be incompetent, and yet knowingly and intelligently 'waive' his right to have the court determine his capacity to stand trial.' " *Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724 (1974) (citing *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). *See also Commonwealth v. Tyson*, 485 Pa. 344, 402 A.2d 995 (1979). Thus, we hold that this issue has not been waived.[9]

Appellant argues that it is impossible to determine his competency at the time of trial via a retrospective PCRA hearing. He contends that since the issue of competency was not litigated in his September of 1992 trial, a new trial must perforce be awarded. He asserts that the PCRA court abused its discretion when it held a hearing on this issue and did not simply award Appellant a new trial.

9. Our colleague in the dissent appears to be of the belief that we recognize that Appellant waived the issue of whether he was competent to stand trial, and then proceed to analyze this waived claim. He posits that such a position is inconsistent with the PCRA's pronouncement that we should not review waived claims, and our decision in *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), declaring that we will no longer apply the relaxed waiver rule to collateral matters.

With all due respect to our learned colleague, his analysis rests on a faulty premise. We do not, as he seems to believe, conclude that Appellant waived the issue of his competency to stand trial and then review it. To the contrary, we find that this issue has not been waived. As noted *supra*, it would be virtually an oxymoron to say that an individual may have been incompetent to stand trial, but nonetheless competently waived this issue.

64

 We first address Appellant's assertion that the PCRA court abused its discretion when it held a hearing on the issue of Appellant's competence at the time of trial rather than automatically awarding a new trial. Apparently, Appellant is of the belief that whenever a claim regarding a defendant's ability to stand trial is raised for the first time after the trial has ended, a new trial should be awarded. He argues that such a rule is compelled by the United States Supreme Court's decisions in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) and *Pate, supra.* The defendants in both of these matters claimed that they had been incompetent at the time of trial. The high Court found that in those matters, retrospective hearings could not adequately determine whether the defendants had been competent at the time of their respective trials. The Court therefore awarded new trials to the defendants. *Drope*, 420 U.S. at 183, 95 S.Ct. 896; *Pate*, 383 U.S. at 386–87, 86 S.Ct. 836.

There are decisions of this court in which we have accepted, without discussion, that the issue of the defendant's competency at trial may be decided via a retrospective hearing. *See, e.g., Commonwealth v. Johnson*, 490 Pa. 312, 416 A.2d 485, 487 (1980) (court held a retrospective hearing on whether defendant was competent to stand trial; court determined, via the testimony of trial counsel and appellant, that appellant understood the nature of the trial proceedings); *Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724, 726 (1974) (remand to the trial court to hold a retrospective hearing to determine whether defendant was competent to stand trial). However, prior to this date, we have not squarely addressed the issue as to whether a retrospective hearing may be held as to a defendant's competency.

 We do not agree with Appellant that the United States Supreme Court has flatly stated that retrospective hearings are forbidden, and that a new trial must perforce be awarded whenever claims like Appellant's are advanced. Rather, we find that the decisions from the high Court act simply as an admonition that there are inherent difficulties in retrospectively determining a defendant's competency, difficul-

ties that in some cases may be insurmountable. *Drope* and *Pate* do not, however, announce a *per se* rule that such retrospective hearings are forbidden. We now hold that whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant, such a hearing is permissible. *Accord United States v. Renfroe,* 825 F.2d 763 (3rd Cir.1987); *United States v. Makris,* 535 F.2d 899 (5th Cir.1976); *Reynolds v. Norris,* 86 F.3d 796 (8th Cir.1996); *People v. Mitchell,* 189 Ill.2d 312, 245 Ill.Dec. 1, 727 N.E.2d 254 (2000); *State v. Snyder,* 750 So.2d 832 (La.1999); *Montana v. Bostwick,* 296 Mont. 149, 988 P.2d 765 (1999); *Bryan v. State,* 935 P.2d 338 (Okla.1997); *State v. Johnson,* 133 Wis.2d 207, 395 N.W.2d 176 (1986).[10]

At this juncture, we must articulate the test as to when a retrospective hearing may be held where the issue of defendant's competency at trial is raised in a PCRA petition, and apply this test to the matter *sub judice.* First, the PCRA court must determine whether the defendant's PCRA petition raises a material issue of fact concerning whether he was competent at the time of trial such that he would be entitled to a hearing on the claim. *See* Pa.R.Crim.P. 908(A)(2); *see also Banks,* 656 A.2d at 473.

Next, the PCRA court must decide whether there exists sufficient evidence of defendant's mental status at the time of trial such that a hearing would be adequate to address the issue of competency, or whether the evidence is so lacking that a new trial must be awarded. In determining whether a

10. We note that Appellant also argues that *Appel v. Horn,* 1999 WL 323805 (E.D.Pa.1999), an unpublished decision, compels us to find that retrospective hearings on a defendant's competency at the time of trial are *per se* forbidden. We reject this contention for two reasons. First, even if such a decision would have any precedential effect in the federal system, it has none in our state court system. Decisions by federal courts inferior to the United States Supreme Court have no precedential authority over this or any other court within this Commonwealth's judicial system. *See Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31, 39 (1998). Second, we decline to adopt the rationale underlying the federal district court's *Appel* decision as it comes disconcertingly close to announcing a blanket rule forbidding retrospective hearings. As stated *supra,* such a *per se* rule is not consonant with decisional law from the United States Supreme Court.

meaningful retrospective hearing can take place, some of the factors that the PCRA court should consider are the passage of time since the trial, statements made by the defendant at trial, the availability of contemporaneous medical and psychiatric evidence, and the availability of witnesses—both expert and nonexpert—who could offer testimony regarding the defendant's mental status at the time of trial. *See Reynolds*, 86 F.3d at 802; *Bostwick*, 988 P.2d at 772. Such a determination is to be made on a case-by-case basis. We emphasize that a PCRA court need not have every type of evidence on this list in order for it to decide whether a retrospective hearing may be held. Furthermore, this list is not exhaustive. If the trial court finds some other type of evidence helpful in resolving whether a retrospective hearing may be held, the trial court may receive such evidence. We will not disturb a PCRA court's ruling as to whether a retrospective hearing should be held absent an abuse of discretion.

In applying this test to the matter *sub judice*, we find that Appellant established that there was a material issue of fact. Appellant claimed in his PCRA petition that at the time of trial, he was incompetent as he was unable to understand the nature of the proceedings and was unable to offer assistance to his counsel at trial; he indicated that he had experts ready and willing to testify on this point. The Commonwealth, on the other hand, denied that Appellant was incompetent at the time of trial. As there were real factual disputes concerning Appellant's mental status at the time of trial, the PCRA court appropriately ordered that a hearing be held.

Next, we must determine whether the PCRA court properly held that there was sufficient evidence available in order to determine Appellant's competency. The PCRA court below found that a hearing could be held as evidence regarding Appellant's mental state at the time of trial—in the form of observations of experts and trial counsel—was available. Furthermore, we note that the hearing in this matter was held approximately three years after Appellant's trial. This passage of time is not so lengthy as to call into doubt the witnesses' ability to recall Appellant's demeanor and actions.

In light of these factors, we conclude that the PCRA court did not abuse its discretion when it held a retrospective hearing.

We now turn to an examination of the PCRA court's conclusion that Appellant was competent at the time of the 1992 trial. Our analysis begins with the principle that a defendant is presumed to be competent to stand trial. *See Commonwealth v. duPont*, 545 Pa. 564, 681 A.2d 1328, 1329–30 (1996). Thus, the burden is on Appellant to prove, by a preponderance of the evidence, that he was incompetent to stand trial. In order to prove that he was incompetent, Appellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1270 (1989); *see also* 50 P.S. § 7402(a). Furthermore, we note that we are bound by the PCRA court's credibility determinations where there is record support for those determinations. *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 93 (1998).

After reviewing the evidence, the PCRA court found that Appellant was not incompetent at the time of the 1992 trial. The PCRA court noted that of the experts testifying on behalf of Appellant, the bulk of them had not examined Appellant at the time of the 1992 trial.[11] The PCRA court therefore found that their testimony was not relevant to determining whether Appellant was competent at the time of trial. Also, the PCRA court specifically found the testimony of Dr. Lawson Bernstein, the only one of Appellant's experts who had seen Appellant anywhere near the time of the 1992 trial, to be lacking in credibility and persuasiveness. PCRA Ct. slip op. at 7. The PCRA court noted that Dr. Bernstein's testimony at the 1996 PCRA hearing, in which he stated that Appellant was incompetent at the time of the 1992 trial, was at odds with treatment records made in 1992. Specifically, the PCRA

11. Two witnesses—Dr. Jonathan Himmelhoch and Dr. Robert Wettstein—had last examined Appellant in the mid–1980s. Dr. Fred Gallo examined Appellant in 1985 and again in 1996. Dr. Robert Fox evaluated Appellant in 1996. Finally, Dr. Henry Dee never examined Appellant; he based his opinion on records prepared by other experts and on Department of Corrections records.

court found that notes made by Dr. Bernstein and other mental health experts in 1992 showed that Appellant was "capable of rational understanding of the events going on in his life and the ability to cooperate with the care being provided." PCRA court slip op. at 8. We will not disturb the credibility determination of the PCRA court.

The PCRA court then turned to examining testimony of the attorneys who represented Appellant at the guilt and penalty phases of his trial. The attorneys testified that Appellant manifested that he understood the nature of the charges against him. Furthermore, Appellant participated in formulating his defense. PCRA court slip op. at 9–12. The PCRA court credited this testimony.

The PCRA court weighed all of the evidence presented at the hearing. It concluded that Appellant had not established that he was incompetent at the time of his 1992 trial. As we do not perceive that the PCRA court abused its discretion in making this determination, we deny Appellant relief.

▮▮▮ Appellant's remaining claims are of trial court error, prosecutorial misconduct, and ineffective assistance of all prior counsel. As Appellant's issues of trial court error and prosecutorial misconduct were not raised on direct appeal, they are waived. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998). The only issues that remain are the claims of ineffective assistance of counsel.

▮▮▮ Appellant claims that guilt and penalty phase counsel were ineffective for failing to raise several issues, and that all previous counsel were ineffective for failing to raise these claims. The ineffectiveness claims relative to guilt and penalty phase counsel have been waived, however, as they were not raised when Appellant obtained new counsel on direct appeal, the time which represented the first opportunity to raise these claims. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(b).[12]

12. We acknowledge that we recently stated that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002) We explicitly stated that the *Grant* rule,

██ Yet, Appellant has also raised a layered ineffective-ness claim as he has alleged that counsel on direct appeal was ineffective for failing to assert claims of guilt and penalty counsels' ineffectiveness. *See* PCRA petition at 150. The query now is whether Appellant's layered claim of ineffective-ness has been preserved.

██ We recently acknowledged that our court's jurispru-dence regarding the proper manner in which to present and establish a layered ineffectiveness claim has been undeniably "murky". *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1020 (2003). The *McGill* decision was crafted to cut through this confusion and articulate, with precision, the meth-od by which a petitioner preserves and proves a layered ineffectiveness claim. In order to properly **preserve** such a claim, *McGill* dictates that he must: (1) plead, in his PCRA petition, that immediately prior counsel was ineffective for failing to raise the underlying ineffectiveness claim; "and (2) **present** argument on, i.e., develop, each prong of the *Pierce* test [13] as to [immediately prior counsel's] representation...." *Id.* at 1022 (emphasis in the original). A petitioner shows that there is merit to the claim that immediately prior counsel was ineffective where he establishes the underlying claim of inef-fectiveness. For example, in the matter *sub judice,* there would be arguable merit to Appellant's claims of ineffective-ness of direct appellate counsel if all three *Pierce* prongs are met as to an underlying claim of guilt or penalty phase counsel. *See McGill,* 832 A.2d at 1023.

Yet, a petitioner does not preserve a layered claim of ineffectiveness merely by focusing his attention on whether guilt or penalty phase counsel was ineffective. Rather, the petitioner must also present argument as to how the second and third prongs of the *Pierce* test are met with regard to the layered claim. In the matter *sub judice,* this requirement

however, has "no effect on cases currently pending on collateral re-view." *Id.* at 739 n. 16 (Pa.2002). Thus, the *Grant* rule is not implicated in this matter. *See Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 n. 12.

13. *Commonwealth v. Pierce,* 567 Pa. 186, 786 A.2d 203, 213 (2001).

demands that Appellant establish that direct appellate counsel lacked a reasonable basis for failing to raise the claims that guilt and penalty phase counsel were ineffective, and also that Appellant was prejudiced by direct appellate counsel's failures.

In applying *McGill* to this matter, we conclude that Appellant met the pleading requirement as he did plead in his PCRA petition that immediately prior counsel was ineffective for failing to raise the underlying ineffectiveness claims. Yet, he has failed to develop argument on the second and third prongs of the *Pierce* test with regard to direct appeal counsel. Thus, per *McGill*, he has not properly preserved his claims of direct appellate counsel ineffectiveness.

We must next determine the appropriate course of action vis-à-vis these unpreserved claims. In some matters where a petitioner has failed to present argument on all three *Pierce* prongs with regard to the layered ineffectiveness claim, we will remand the matter to allow the petitioner to amend his PCRA petition. *McGill*, 832 A.2d at 1024. Yet, such a remand is not required in every such instance. We recently stated that

> where the petitioner has pled, presented, and proved his "nested" claim of trial counsel ineffectiveness, a remand is warranted to give the petitioner an opportunity to correct any errors with regard to the pleading and presentation of his claim of appellate counsel ineffectiveness. Nevertheless, there is simply no need to remand a PCRA petition when the petitioner has not carried his *Pierce* burden in relation to the underlying claim of trial counsel's ineffectiveness, since even if petitioner were able to craft a perfectly layered argument in support of his [claim of appellate counsel's ineffectiveness], the petitioner's claim would not entitle him to relief.

*Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651, 657 (2003).[14]

Thus, per *Rush*, we need not remand this matter if we determine that Appellant failed to carry his burden of proving that guilt and penalty phase counsel were ineffective.

14. A remand may also be necessary if a PCRA court fails to provide adequate pre-dismissal notice to a PCRA petitioner. *See Rush*, 838

██ In examining Appellant's underlying claims of guilt and penalty phase counsel, we apply general principles of law relating to ineffectiveness claims. As the starting point for our review, we presume that counsel is effective. *Commonwealth v. Cross,* 535 Pa. 38, 634 A.2d 173 (1993). In order to overcome this presumption, an appellant must establish three points. First, an appellant must show that the underlying claim is of arguable merit. *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, an appellant must prove that counsel's action or inaction was not grounded on any reasonable basis. *Id.* Finally, an appellant must establish that "there is a reasonable probability that the act or omission prejudiced appellant in such a way that the outcome of the proceeding would have been different." *Commonwealth v. Fletcher,* 561 Pa. 266, 750 A.2d 261, 270 (2000). "If it is clear that [an a]ppellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *Travaglia,* 661 A.2d at 356. We also note that an "appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims." *Commonwealth v. Beasley,* 544 Pa. 554, 678 A.2d 773, 778 (1996).

██ In applying this standard to the claims raised by Appellant, we first examine the underlying claims of ineffectiveness. Appellant's first ineffectiveness claim is that guilt and penalty phase counsel were ineffective for failing to request a competency hearing at the time of trial. As discussed *supra,* this claim is without merit and thus Appellant has failed to meet the first prong of the *Pierce* test. Furthermore, to the extent that Appellant's argument can be read to stand for the proposition that whenever a defendant has at one point in time been diagnosed with a mental illness, then his trial counsel will be deemed ineffective if he does not

A.2d at 658. As such a concern is not present in this matter, there is no need for a remand on this basis.

request a competency hearing at the time of trial, Appellant's argument is expressly rejected. The fact that a defendant has experienced mental illness in the past does not *per se* render him incompetent to stand trial.

Next, Appellant asserts that all prior counsel were ineffective for failing to allege that the Commonwealth improperly withheld evidence of Appellant's mental illness and incompetence in derogation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Appellant alleges that the Commonwealth failed to disclose Department of Corrections' records relating to Appellant's mental health. This court addressed a similar claim in *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999). In that matter, the defendant alleged that *Brady* was violated when the Commonwealth did not turn over defendant's own medical records. We rejected this contention, stating that "[t]he Commonwealth does not violate the *Brady* rule when it fails to turn over evidence readily obtainable by, and known to, the defendant." *Pursell,* 724 A.2d at 306. Thus, this claim is without merit.

Next, Appellant claims that guilt phase counsel was ineffective when he failed to present a mental health defense. This claim must be rejected. At the PCRA hearing, guilt phase counsel testified that he and Appellant discussed the nature of the defense that would be presented at the second trial. They both agreed that since a mental health defense had failed to convince the jury at the first trial, then it was not sensible to pursue this failed defense at the second trial. PCRA court hearings, N.T., 2/06/1997, at 469–70. Declining to pursue a defense which had proven unsuccessful at an earlier trial is eminently reasonable, and therefore Appellant has not satisfied the second prong of the *Pierce* test with regard to this underlying claim. Therefore, this claim must fail.

Appellant next contends that all prior counsel were ineffective for failing to allege that the trial court erred when it admitted the psychiatric testimony of Dr. Robert Wettstein. At Appellant's 1992 trial, the Commonwealth introduced the

testimony Dr. Wettstein had given at the first trial. In his testimony at the first trial, Dr. Wettstein recounted that Appellant had confessed that he had killed Huber.

Appellant himself admits that this court previously rejected his claim that the testimony of Dr. Wettstein was inadmissible at the 1992 trial. *See Santiago II.* As the claim has been previously litigated, it is not cognizable under the PCRA. 42 Pa.C.S. § 9544(a)(2). Furthermore, Appellant cannot attempt to resurrect this claim "by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims." *Beasley,* 678 A.2d at 778.

Appellant next contends that prior counsel were ineffective for failing to raise the claim that Appellant's confession to the police was not freely given because Appellant was mentally ill at the time he made these statements; he also claims that Dr. Wettstein's testimony, which Appellant considers fruits of his confession to police, should not have been admitted.

This claim must be rejected. First, the confession to the police officers was not introduced at trial in *Santiago II.* Thus, there is no basis for a claim that counsel was ineffective for failing to object to evidence that was never admitted. Second, as noted *supra,* the admissibility of Dr. Wettstein's testimony had been previously litigated in *Santiago II* and this claim cannot be revived by alleging that counsel was ineffective for failing to argue other theories vis-à-vis this particular claim. *Beasley, supra.*

Appellant's next contention is that prior counsel were ineffective for failing to raise the claim that the identification testimony of Pasternak was unreliable. Appellant contends that Pasternak's identification of him was improperly influenced by a suggestive photo array.

It is clear that the underlying claim of ineffectiveness is not valid as this issue was pursued in post-trial motions; the trial court denied relief on this claim. *See* Tr. ct. slip op., dated 8/04/1994, at 8. Thus, we cannot find post-verdict counsel

ineffective as he did indeed pursue the very issue that Appellant contends he failed to raise.

To the extent that Appellant's claim challenges the effectiveness of direct appellate counsel for neglecting to raise this issue on direct appeal, this issue also fails. In order to establish that this claim has any merit, Appellant must show that the totality of the circumstances indicate that Pasternak's identification of him as the murderer was unreliable. *Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663, 668 (1993). Specific factors to be taken into account include, *inter alia,* the witness' ability "to observe the criminal act; the accuracy of photo array selection and other descriptions; the lapse of time between the act and any line-up; and any failure to identify the defendant on prior occasions." *Id.*

We find that this issue has no merit. In reaching this conclusion, we rely heavily on the trial court's disposition of the issue that Pasternak's identification testimony was unreliable. In rejecting Appellant's claim, the trial court found that the totality of the circumstances indicated that Pasternak's identification was reliable. The trial court noted that Pasternak had a clear opportunity to view Appellant committing the crime, and that she watched him for at least fifteen seconds from a distance of no more than twenty feet. Furthermore, Pasternak identified Appellant's picture only days after the incident and never failed to identify Appellant as the murderer. Finally, the trial court found that the photographs in the array were sufficiently similar so as not to draw attention to Appellant's picture alone. Tr. ct. slip op., dated 8/04/1994, at 8. As we find this analysis to be sound, we concomitantly conclude that there is no merit to the claim that appellate counsel was ineffective for failing to raise this claim on appeal.

Next, Appellant contends that trial counsel was ineffective for failing to present substantial mitigating evidence at sentencing phase. First, he contends that penalty phase counsel should have introduced expert testimony regarding his mental illness. We are somewhat mystified as to this claim as penalty counsel did present expert testimony as to Appellant's

mental health problems. Specifically, Drs. Himmelhoch and Wettstein testified extensively as to Appellant's history of mental illness. N.T., 9/08/1992, at 321–336; 338–53. To the extent that Appellant's claim can be read as an argument that counsel was ineffective for failing to put additional experts on the stand, we reject it. We will not find counsel ineffective for failing to produce additional experts who would have given testimony which would have merely been cumulative.[15]

Appellant also contends that penalty phase counsel was ineffective for failing to introduce in mitigation evidence related to Appellant's troubled childhood. Specifically, he argues that counsel should have elicited testimony that his father had abandoned him, and that his mother and other women in his childhood household abused Appellant, treating him more harshly because he was male.

First, he claims that penalty phase counsel should have called family members, specifically his sister, to testify to the harsh treatment to which Appellant was subjected throughout his childhood. In order to prevail on this claim that penalty phase counsel was ineffective for failing to call a witness, Appellant must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant. *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 275 (2000). Appellant has failed to meet this burden. At penalty phase, Appellant's counsel stated that he interviewed Appellant's sister and she indicated that she would not testify on behalf of Appellant at the penalty phase as her testimony would be of no assistance to him. N.T., 9/08/1992, at 355. Thus, as Appellant's sister declared at the time of trial that

15. Appellant also asserts that evidence of his alcohol and drug abuse should have been presented to further substantiate his mental health problems. The jury was, however, informed of Appellant's substance abuse issues. N.T., 9/08/1992, at 344 and 351.

she would not testify on behalf of Appellant, penalty phase counsel was not ineffective for failing to call Appellant's sister.

Appellant also claims that penalty phase counsel should have solicited expert testimony that Appellant suffered mental problems due to his allegedly troubled childhood.[16]

We recognize that there were only fleeting references to Appellant's troubled childhood in the testimony offered by Appellant's experts at penalty phase. *See* N.T., 9/08/1992, at 332. Yet, even if we were to assume *arguendo* that penalty phase counsel should have elicited more testimony regarding Appellant's allegedly troubled childhood, we would nonetheless find that Appellant was not entitled to relief as he has not established the prejudice prong of his ineffectiveness claim. Considering the extensive expert testimony relative to his mental illness, and the fact that the jury found the existence of the two mental health mitigating circumstances, 42 Pa.C.S. § 9711(e)(2) and (e)(3), we cannot say that Appellant has shown that this additional quanta of evidence would have affected the outcome of Appellant's trial. Therefore, we deny Appellant relief.[17]

**16.** Specifically, Dr. Wettstein would have testified as to the "emotional abandonment and abuse inflicted upon [Appellant] by his mother and subsequently his aunt as a child; physical abandonment by his father; [and] an impoverished and deprived childhood...." Affidavit of Dr. Wettstein. Dr. Himmelhoch's affidavit is substantially more vague on this point; Dr. Himmelhoch merely indicates that he would have testified as to Appellant's "background, history, mental illness and character...." Affidavit of Dr. Himmelhoch. We note that Appellant also references the affidavit of Dr. Gallo in his PCRA petition. Dr. Gallo's affidavit, however, does not indicate that he would have testified as to Appellant's troubled childhood.

**17.** We are aware of the United States Supreme Court's recent decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), wherein the high Court found that the defendant was prejudiced when trial counsel failed to produce history of the defendant's child abuse in mitigation. *Williams*, however, is readily distinguishable. In that case, defense counsel seemed confused about whether he was defending or prosecuting the defendant. Bizarrely, "[t]he weight of defense counsel's closing ... was devoted to explaining that it was difficult to find a reason why the jury should spare Williams' life." *Id.* at 369, 120 S.Ct. 1495. Williams' counsel failed to produce even one piece of evidence which showed that the defendant was borderline mentally retarded, that he had been abused as a child, and was a model

Next, Appellant contends that penalty phase counsel was ineffective for failing to request a jury instruction that if Appellant were sentenced to life imprisonment, he would be ineligible for parole; he claims that all prior counsel were ineffective for failing to raise this issue.

A jury instruction that "life means life" is commonly referred to as a *Simmons* instruction. This is in reference to *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the case in which a plurality of the high Court reasoned that such an instruction is required where the defendant's potential for future dangerousness is at issue in the penalty phase. We adopted the *Simmons* rule in *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 889 (1995). Yet, we have explicitly stated that our adoption of "*Simmons* will not be given retroactive effect in a collateral attack upon a petitioner's sentence." *Commonwealth v. Laird*, 555 Pa. 629, 726 A.2d 346, 360 (1999). In PCRA petitions such as Appellant's, the rule to be applied is the one which was applicable at the time of trial. At the time of Appellant's 1992 trial, the law of this Commonwealth specifically prohibited an instruction which would inform a jury that life means life without parole. *See Commonwealth v. Gibson*, 547 Pa. 71, 688 A.2d 1152, 1169 (1997); *Commonwealth v. Mills*, 350 Pa. 478, 39 A.2d 572 (1944). As we do not require that counsel be omniscient, we cannot find Appellant's counsel was ineffective for failing to anticipate a change in the law. Therefore, Appellant's penalty phase counsel was not ineffective when he failed to request a

prisoner. The only evidence presented by trial counsel in mitigation amounted to testimony of family and neighbors that the defendant was a "nice boy" and not violent, and a psychiatrist whose testimony consisted solely of recounting how the defendant had removed the bullets from his gun during an earlier robbery so that no one would be hurt. *Id.* The Court opined that considering the overwhelming amount of mitigating evidence which counsel failed to introduce, as well as the paltry mitigating evidence actually presented to the jury, there was a reasonable probability that the result would have been different.

This is in sharp contrast to the matter *sub judice* where penalty counsel introduced substantial evidence in mitigation. This evidence was so substantial that, as noted *supra*, the jury did in fact find the existence of the two mitigating factors relating to Appellant's mental health.

"life means life" instruction. *See Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 900 (1999).

Appellant also contends that all prior counsel were ineffective for failing to raise the issue that the Commonwealth inappropriately relied on a murder and two robbery convictions in order to establish the aggravating circumstance of significant history of prior convictions for violent felony crimes, 42 Pa.C.S. § 9711(d)(9). The crimes to which Appellant refers were those he committed on January 15, 1985 in New Castle, Pennsylvania (collectively, "the January 15, 1985 crimes"). Shortly after midnight on January 15, 1985, Appellant robbed a convenience store outside New Castle. Later that same day, he robbed and killed Dean Keith O'Hara. As to the convenience store crime, Appellant subsequently pled guilty but mentally ill to robbery. A jury trial was held as to the crimes arising from the O'Hara murder. The jury found Appellant guilty but mentally ill as to the charges of second degree murder and robbery.

Appellant now claims that since he was found guilty but mentally ill—rather than simply guilty—the January 15, 1985 crimes cannot be used to establish that Appellant had a significant history of violent felony crimes. Apparently, Appellant is of the belief that guilty but mentally ill convictions are not evidence that a defendant committed acts which this Commonwealth finds to be criminal in nature. The thrust of his argument is that guilty but mentally ill convictions can be used only in mitigation as they establish Appellant suffered from mental illness.

Appellant appears to misunderstand the import of a guilty but mentally ill conviction. Such a conviction does not negate Appellant's intent to commit a criminal act. Rather, a determination that a defendant is guilty of a crime, but was mentally ill at the time of its commission, expressly recognizes that all elements of the crime have been met. *See* 18 Pa.C.S. § 314; *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28 (1991). In fact, a defendant found to be guilty but mentally ill is entitled to no reduction in sentence. Our legislature has

specifically dictated that a defendant found guilty but mentally ill "may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense." 42 Pa.C.S. § 9729(a). Thus, such a conviction may properly be used to support an aggravating circumstance.[18]

In a related claim, Appellant contends that counsel was ineffective for failing to argue that because of the close temporal relationship between the January 15, 1985 crimes with the murder of Huber two days later, it is improper to consider the January 15, 1985 crimes for purposes of establishing that he had a significant history of violent felony crimes. This argument is specious. There is nothing in § 9711(d)(9) which indicates that a defendant may be deemed to have a significant history of violent felony crimes only where those felony crimes occurred long before the murder in question. *See Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398, 407 (1987) (aggravating circumstance of significant history of violent felony crimes can be met even where all felony crimes committed on same day.)

Next, Appellant argues that all prior counsel were ineffective for failing to argue that it was improper for the Commonwealth to use the January 15, 1985 crimes to support two separate aggravating circumstances, namely 42 Pa.C.S. § 9711(d)(9) (significant history of violent felony crimes) and 42 Pa.C.S. § 9711(d)(10) (defendant had a prior conviction for which a sentence of life imprisonment or death was imposable). Appellant argues that using the same evidence to support two different aggravating circumstances amounts to improper double counting of evidence.

We addressed this same issue in *Commonwealth v. Lesko*, 553 Pa. 233, 719 A.2d 217, 224 (1998). In *Lesko*, the Common-

18. Appellant claims that *Zant v. Stephens*, 462 U.S. 862, 885, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) supports his argument that guilty but mentally ill convictions cannot be used to support an aggravating circumstance. Appellant is incorrect. The *Zant* Court in dicta stated that it would be improper to use the fact that a defendant is mentally ill as an aggravating factor. That is not what occurred in the matter *sub judice*. Rather, the jury was asked to consider Appellant's convictions for criminal acts as an aggravating circumstance.

wealth utilized the same two murders to support the aggravating circumstances of 42 Pa.C.S. § 9711(d)(9) and (d)(10). We rejected the defendant's claim that this was improper "double usage" of evidence by the Commonwealth. We stated that this claim was meritless as "[n]othing in [42 Pa.C.S. § 9711] provides that a criminal conviction may be considered under only one subsection." *Id.* We therefore find that Appellant's claim has no merit.

Appellant also contends that all prior counsel were ineffective for failing to argue that trial counsel was ineffective when he failed to request that the trial court instruct the jury that they must find that Appellant's prior convictions of guilty but mentally ill constituted a mitigating factor. Such an instruction, however, would have been in error. It is the purview of the jury to determine whether the evidence establishes an aggravating or mitigating circumstance. *See Caldwell v. Mississippi,* 472 U.S. 320, 328–29, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31, 37 (1998). An instruction by the trial court that the evidence compelled the jury to find the existence of a particular mitigating circumstance would have been an improper intrusion on their authority.

In a closely related claim, Appellant argues that all prior counsel were ineffective for failing to allege that penalty phase counsel was ineffective when he failed to request, and the trial court erred when it failed to provide, an instruction that if the jury were to find the aggravating circumstance of significant history of violent felony crimes, then it was required to find that the mitigating circumstance of § 9711(e)(8) had also been met. Again, this claim lacks merit as it would have been improper for the trial court to dictate that the jury find the existence of a mitigating factor.

Appellant also maintains that penalty phase counsel was ineffective for failing to argue that the jury should consider Appellant's extensive history of mental illness as a reason to spare his life. This claim is baffling as such an

argument was the core of penalty phase counsel's closing. N.T., 9/08/1992, at 364–70. This claim therefore has no merit.

■ Appellant's next series of ineffectiveness claims involve the instructions the trial court gave the jury at penalty phase. First, Appellant contends that the trial court's instructions impermissibly informed the jury that they were not to consider the unique aspects of Appellant's life and the nature of the crime he committed in their deliberations. In support of this argument, Appellant references passages of the trial court's instructions which informed the jury as to how it was to consider and weigh the evidence in "the case"; apparently, Appellant believes that by utilizing the phrase "the case," the trial court was depersonalizing Appellant and inviting the jury to do the same. This claim is utterly devoid of merit. The trial court properly instructed the jury that it was to consider the particular facts of Appellant's history and the nature of his crime in arriving at its decision. The trial court's occasional references to the facts and legal issues presented in "the case" in no fashion put the jury under the delusion that they were engaged in some form of mental gymnastics rather than determining the fate of a living human being.

■ Next, Appellant contends that all prior counsel were ineffective for failing to raise the claim that the jury was erroneously informed that it should not consider sympathy in rendering its verdict. The pertinent part of the trial court's instruction reads as follows:

You are not to base this decision on your own whim or some feeling of personal choice that you have and you should not allow sympathy, prejudice or any emotion to influence you just as were my instructions to you in the guilt phase. It is your duty to base your decision strictly upon the evidence of aggravating and mitigating circumstances.

N.T., 9/08/1992, at 370.

This instruction was correct. We have stated that sympathy is properly considered by the jury only when it arises from relevant evidence of mitigation offered by the defendant. *Commonwealth v. Rainey*, 540 Pa. 220, 656 A.2d 1326, 1334

(1995). Contrary to Appellant's belief, the Pennsylvania death penalty statute does not permit a jury to avoid imposition of a death sentence through the exercise of unbridled discretion or sympathy. *Commonwealth v. King,* 554 Pa. 331, 721 A.2d 763, 776 n. 5 (1998). This claim therefore has no merit.

Appellant also contends that appellate counsel was ineffective for failing to present the claim that this court's proportionality review, which had been mandated by 42 Pa. C.S. § 9711(h)(3)(iii),[19] was inherently flawed. Specifically, Appellant contends that the data base compiled by the Administrative Office of Pennsylvania Courts ("AOPC") contains errors and anomalies, thus rendering a proper proportionality review impossible. We reviewed a similar claim in *Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426 (1997). We noted that in conducting our proportionality review,

we examine not only the compiled data from the AOPC, but we also have at our disposal the verdict sheets and the review forms submitted by the President Judges. This allows us to conduct a thorough review of cases similar to the one in question and provides additional screening for any anomalies that may be present in the AOPC database. We have carefully reviewed these procedures and find nothing arbitrary or capricious in this scheme. Instead, we believe that our proportionality review comports with the General Assembly's desire to afford capital defendants an additional check against the arbitrary imposition of the death penalty.

*Id.* at 441. As Appellant presents no reason for us to abandon our holding in *Gribble,* we discern no basis on which to find that counsel was ineffective for failing to raise this claim.

In conclusion, we find Appellant has not established any of his claims that guilt and penalty phase counsel were ineffective. Thus, while we acknowledge that Appellant's argument regarding his layered ineffectiveness claims are deficient,

19. Following the imposition of Appellant's sentence, the legislature eliminated the statutory provisions requiring this court to conduct a proportionality review of death sentences. Act of June 25, 1997, No. 28, S 1 ("Act 28"), effective immediately.

there is no need for a remand to cure this deficiency as Appellant has not established that he is entitled to relief on any of his underlying ineffectiveness claims. *See McGill, supra; Rush, supra.*

For the foregoing reasons, we affirm the order of the PCRA court.[20]

Justice CASTILLE files a Concurring Opinion in which Justice EAKIN joins.

Justice SAYLOR files a Concurring Opinion.

Justice NIGRO concurs in result.

## *CONCURRING OPINION*

Justice CASTILLE.

I join the Opinion Announcing the Judgment of the Court in the disposition of appellant's claims with the exception of the discussion pertaining to appellant's mental competency which I would hold as waived. The lead opinion today *sua sponte* converts a preserved claim of layered counsel ineffectiveness for failing to assert that appellant was mentally incompetent to stand trial into the underlying claim of incompetence itself—a claim which I believe is waived under the plain language of Section 9544 of the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, because it was not raised either before appellant's second trial or on his direct appeal therefrom. In so doing, the lead opinion inadvertently resurrects the capital case relaxed waiver rule which this Court abrogated on PCRA review in *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998). The lead opinion further proceeds to evaluate the merits of the waived mental competency claim, but cites no support for its decision to *sua sponte* convert the claim actually posited on this appeal. As support for its decision to ignore the PCRA waiver provision and the clear holding in *Albrecht*, the lead opinion cites to quarter-

---

**20.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor.

century-old cases involving direct appeals and the proper application of this Court's jurisprudential waiver doctrines. These cases provide no authority for the lead opinion's decision to negate the PCRA waiver provision; to resurrect relaxed waiver on PCRA appeals; or to declare that belated, court-raised claims of competency to stand trial are beyond the constitutional power of the General Assembly to deem waivable. Although the lead opinion ultimately denies relief upon the waived claim it raises and decides, the rule that it would craft, and the violence such a rule would do to the PCRA and our recent precedent compels me to register my respectful disagreement.

The lead opinion recognizes that appellant—who was presumed to be mentally competent and who was represented by counsel at all times—failed to raise a claim that he was mentally incompetent at the time of his retrial. Appellant also failed to raise this claim on his ensuing direct appeal to this Court. It is indisputable that appellant had a full and fair opportunity to raise, at the appropriate time, the issue of his competency to stand trial. In addition, under this Court's earlier precedent, appellant had the right to raise the claim belatedly upon direct appeal, even though the claim had not been preserved at trial.[1] The counseled appellant, however, never raised the competency claim and his judgment became final, subject only to collateral attack.

On collateral attack, appellant's current counsel explicitly recognize that his mental competence to stand trial was not challenged either at trial or upon direct review and, for that reason, they pose the current claim as a federal, Sixth Amendment claim sounding in the "layered" ineffective assistance of all of his previous counsel. *See, e.g.,* Initial Brief of Appellant, 12 ("The counsel who represented [appellant] at the retrial rendered woefully inadequate assistance in failing to raise, in any way, the questions about his lack of competency;" in so

---

1. The waived claim would have been reviewable both under this Court's then-existing capital direct appeal relaxed waiver rule and under the direct appeal competency cases the lead opinion today *sua sponte* invokes, and radically expands, to nullify the requirements of the PCRA.

doing, "these counsel *did not function as the counsel envi- .
sioned by the Sixth Amendment . . .*") (emphasis original); *id.,*
30–33 (same, while adding that all previous counsel were
ineffective for failing to properly raise and litigate the compe-
tency issue); Appellant's Reply Brief, 1–9 (same). The Com-
monwealth responds to this Sixth Amendment-based claim as
the ineffective assistance of counsel claim that it is. The lead
opinion nevertheless would *sua sponte* convert the claim into
the underlying, but constitutionally distinct and waived, due-
process-related claim of competency to stand trial. The lead
opinion neither acknowledges nor attempts to defend its con-
stitutional alchemy.[2]

The lead opinion's conversion of the claim leads it to a
totally unnecessary examination of the propriety and contours
of "retrospective" competency hearings.[3] In that examination,
the lead opinion suggests that there may be instances when a
"new trial must be awarded" in response to a belated compe-
tency claim raised for the first time upon collateral review
because a "meaningful" retrospective competency examination
cannot be had. Opinion Announcing Judgment of Court, 579
Pa. at 64–66, 855 A.2d at 693. The combination of this *dictum*
with the lead opinion's *ad hoc* nullification of the PCRA waiver
provision would create a powerful incentive for trial counsel
who perceive marginal or non-existent claims of mental incom-
petence deliberately to forego requesting competency exami-

2. This Court's general proscription against raising and reviewing issues
*sua sponte* is well-settled. *E.g., Danville Area School Dist. v. Danville
Area Educ. Ass'n*, 562 Pa. 238, 754 A.2d 1255, 1259 (2000); *see also
Commonwealth v. Overby*, 570 Pa. 328, 809 A.2d 295 (2002) (Castille, J.,
dissenting) (disagreeing with plurality's *sua sponte* conversion of inef-
fective assistance of counsel claim into underlying but waived claim of
trial court error from which it derived). Furthermore, as Justice (now
Chief Justice) Cappy noted in *Danville:* "This jurisprudential tenet that
a court will consider only the controversies preserved by the litigants
even applies to allegations of constitutional error." 754 A.2d at 1259.

3. This Court may someday have to pass upon the propriety of retrospec-
tive competency assessments: for example, where a defendant timely
requests, but is erroneously deprived of, a competency hearing. But
there is no reason to convert the ineffectiveness claim raised here in
order to reach out and decide that question in this case.

nations in the hopes of building in a better claim for the type of PCRA relief promised by the lead opinion's *dicta.*

Collateral attacks upon final state convictions in Pennsylvania are supposed to be governed exclusively by the terms of the PCRA, and not by *ad hoc* doctrines judicially crafted by this Court. *See Commonwealth v. Cruz,* 578 Pa. 263, 277–79, 851 A.2d 870, 879 (2004) (Castille, J., dissenting). This Court has explicitly "acknowledged that the General Assembly is authorized, consistent with the Pennsylvania Constitution, to impose reasonable restrictions on the various forms of postconviction review." *Commonwealth v. Abdul–Salaam,* 571 Pa. 219, 812 A.2d 497, 501 (2002) (*citing Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 642 (1998)). One such reasonable restriction is the PCRA waiver provision, which unambiguously states that, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b); *see Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33, 39 (2002) (issues are waived under PCRA if appellant could have presented them on direct appeal but failed to do so); *Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935, 940 (2001) (same). Under the plain language of this provision any claim that appellant was incompetent to stand trial is waived, since Pennsylvania affords ample opportunity to raise claims of incompetence both at trial and upon direct appeal.

The PCRA waiver provision makes no mention of exceptions for hindsight-based claims of mental incompetence to stand trial first forwarded years later by PCRA counsel upon collateral attack. Nor does the PCRA require that a waiver of a claim affirmatively appear to be "knowing and intelligent" or "competent" for the waiver provision to apply. In addition, the provision does not state that claims which this Court has deemed to be unwaivable if pursued for the first time on direct appeal—a rule which makes it even easier for a defendant to present the claim at a time when a meaningful hearing might be held—are not subject to the waiver provision. Instead, the PCRA is written logically: claims are deemed waived if there existed a fair opportunity to litigate the claims before final

judgment.[4] Since this Court has deemed competency claims to be non-waivable on direct appeal, the always-counseled appellant here had more than a fair opportunity to litigate his competency to stand trial prior to final judgment. It is incongruous that, in declaring that competency claims raised before an appellate court upon collateral appeal are an "exception" to the PCRA waiver provision, the lead opinion never cites or discusses the terms of the statute itself. In addition to flying in the face of the actual language of the PCRA, the lead opinion's view is contrary to this Court's existing PCRA jurisprudence. For example, in *Abdul–Salaam*, Justice (now Chief Justice) Cappy noted that, "following *Commonwealth v. Albrecht* ..., we require strict adherence to the statutory language of the PCRA and a petitioner will only be entitled to relief 'where a petitioner shows that the statutory exceptions to waiver in the PCRA apply [found in the pre–1995 version of the PCRA], or where petitioner properly raises claims of counsel's ineffectiveness.' " 812 A.2d at 503 (*quoting Bracey,* 795 A.2d at 941). *See also Commonwealth v. Eller,* 569 Pa. 622, 807 A.2d 838, 845 (2002) (courts have no authority to create exceptions to PCRA in addition to those delineated in PCRA) (construing time-bar provision).

4. It is notable that, in the U.S. Supreme Court cases cited by appellant concerning the propriety of retrospective competency hearings, *see Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) and *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the grant of federal habeas corpus relief essentially turned upon the respective states' failure to provide a fair opportunity for litigation of the competency claim at the time of trial. That is simply not the case in Pennsylvania. Moreover, in light of the changes to the federal habeas review paradigm in the thirty-plus years since *Drope* was decided, including most notably the decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it is unlikely that the Supreme Court today would be as dismissive of reasonable state procedural regulation of competency claims. In any event, nothing in these cases suggests that all belated claims of incompetency raised for the first time upon state collateral attack must be entertained as if the defendant had requested and been denied a timely determination, or as if the trial court had defaulted on an independent obligation to raise the issue itself. In short, there is nothing in federal constitutional law which commands or supports the lead opinion's negation of the PCRA waiver provision.

The lead opinion's inexplicable return to relaxed waiver leads it to suggest a review paradigm which betrays an uncharacteristic misapprehension of the very operation of the PCRA. Most claims which could have been raised at trial or on direct appeal but were not—including claims implicating fundamental rights and claims of constitutional dimension—are waived under the PCRA. But, that is not the end of the matter. By deeming claims premised upon the ineffective assistance of counsel to be cognizable upon collateral review, the PCRA appropriately channels and allows waived claims to form the basis for constitutionally-distinct claims arising under the Sixth Amendment. The actual claim raised by appellant here—that his prior counsel were ineffective for failing to challenge his competency to stand trial—is no less amenable to rational, jurisprudentially sound decision-making than other claims of counsel ineffectiveness deriving from foregone rights of constitutional magnitude, such as the validity of a jury waiver or a guilty plea or a waiver of counsel, etc.

When a claim of trial court error—such as a court's permitting an allegedly incompetent defendant to be tried—has not actually been raised at the appropriate time before final judgment, it is unrealistic to entertain collateral attacks upon that final judgment which are premised upon a pretense that the claim has been preserved. Indeed, the perversity of pretending that waived claims have not been waived is what led to this Court's abrogation of relaxed waiver on PCRA review in *Albrecht*. This Court's increasing familiarity with the deficiencies inherent in the relaxed waiver rule was also a major reason why the Court recently abrogated that judicial doctrine in direct capital appeals, where the waiver derives from judicial doctrines rather than statutory command. *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 395–96 (2003). Collateral claims which are cognizable under the PCRA as claims of ineffective assistance of counsel should be litigated as such—particularly given the governing rule that criminal defendants are presumed to be mentally competent,[5] and that

5. As Justice (now Chief Justice) Cappy noted in *Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890 (1999):

their lawyers, who are ethically obliged to raise meritorious claims of client incompetence, are presumed to be professionally competent. The lead opinion today would overturn those presumptions.

The General Assembly, of course, could have exempted claims of mental incompetence from its collateral review paradigm, but it chose not to do so. The reasons for this are not difficult to imagine. An exception for waived claims of mental incompetence would be absurd, given the presumption of competency and the inherent complications in retrospective competency assessments which concern the lead opinion. The practical difficulty in retrospective competency determinations and the very real prospect of meritless claims are factors which should caution against judicially manufacturing an "exception" to the PCRA waiver provision to indulge this claim above all others. A competent trial lawyer presumably can be trusted to ascertain those instances where his client's mental competency may be called into question, *i.e.*, those instances where his client is so beset by mental disease or defect that he could not even consult with counsel or could not even understand the proceedings as they were occurring. Indeed, it is difficult to imagine a situation where ethical and competent counsel would fail to perceive and timely raise the incompetence of the client, if the client truly were incompetent. When a claim of incompetence is not pursued by counsel before final judgment despite ample opportunity, a rational system of collateral review, such as is embodied in the PCRA,

---

A defendant is presumed to be competent to stand trial. *Commonwealth v. duPont*, 545 Pa. 564, 681 A.2d 1328, 1330 (1996). Where a defendant claims he was incompetent to stand trial, he must establish his claim by a preponderance of the evidence. *Id.* In order to prove that he was incompetent to stand trial, Appellant must show that at that time of trial, he suffered from a mental illness or defect such that he did not have the ability "to consult with counsel with a reasonable degree of rational[ ] understanding," and did not have "a rational as well as factual understanding of the proceedings." *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891, 899 (1997) (citations and internal quotation marks omitted). We stress that the temporal focus of this inquiry is limited to the time of trial or when other legal proceedings occurred. *Id.* at 899 n. 8.

728 A.2d at 897 n. 7. The presumption of competency has long been reflected in Pennsylvania legislation as well. *See, e.g.,* 50 P.S. § 7403.

dictates that the proper claim must focus upon counsel's reasons for not pursuing such a claim.

The lead opinion cites to no constitutional basis for concluding that this single type of waived claim falls beyond the power of the General Assembly to channel review through the logical lens of counsel's performance. Instead, the plurality would simply usurp the authority of the General Assembly.

It is also notable that the lead opinion's approach—that ineffectiveness claims relating to failures to litigate competency challenges must be *sua sponte* converted into the underlying claim and then deemed impervious to the PCRA waiver provision—is squarely contrary to recent precedent from this Court. In *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000) the PCRA petitioner, like appellant here, asserted a layered claim of counsel ineffectiveness based upon trial counsels alleged failure to inquire into the petitioners competence to stand trial by seeking psychological and/or intelligence evaluations. This Court addressed and rejected the layered claim of ineffective assistance of counsel upon its merits under Sixth Amendment standards. We did not *sua sponte* convert the claim into the waived, underlying claim of incompetence to stand trial and then review that claim as if the General Assembly lacked constitutional authority to deem it waived. *Id.* at 204.

In support of its declaration that competency claims stand as a proper, court-manufactured exception to the PCRA's waiver provision, the lead opinion cites no case decided under the PCRA, or even to a case involving a collateral attack upon a final judgment. Instead, the lead opinion relies upon two cases which predate the PCRA by years, and which involved questions of judicial waiver and issue preservation for purposes of direct appeal. *See Commonwealth v. Tyson*, 485 Pa. 344, 402 A.2d 995, 997 (1979) (question of competence to stand trial not waived on direct appeal, even though defendant failed to comply with judicial rule requiring that issue be raised in post-verdict motions); *Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724, 727 (1974) (issue of competency to stand trial, which was properly raised in post-verdict motions, not

waived on direct appeal for failure to comply with judicial rules requiring that issue be raised pre-trial or during trial). These cases pre-dating the PCRA and involving the scope and propriety of judicial rules respecting issue preservation for direct appeal are irrelevant to the question of statutory waiver under the PCRA. Certainly, these direct appeal cases did not act to overrule anticipatorily or restrict the PCRA's valid waiver provision. Nor do these cases operate to overrule the settled legal presumption that a person is competent—a presumption that should negate the "virtual oxymoron" that confounds the lead opinion.

The lead opinion fails to recognize the fundamental distinction between this Court's authority to modify waiver doctrines emanating from this Court's procedural rules and practices as opposed to waivers which result from application of the terms of a statute, such as the PCRA. In my Concurring Opinion in *Bracey, supra,* I explained that, while this Court obviously has the power to refine or modify waiver doctrines of its own creation to better balance jurisprudential concerns, we do not have the same unbridled power when interpreting a statute:

> the calculus is entirely different when the waiver at issue arises from a non-judicial source such as the legislative commands of the PCRA. When an issue is waived under the PCRA, it is not because of our appellate preservation/waiver doctrine, but because a legislative judgment has been made as to what types of claims should be available **at all** on collateral review. We cannot simply ignore that legislative judgment as if it were a judicial concern subject to weighing against other judicial concerns.

795 A.2d at 956. In purporting to usurp the PCRA waiver provision today, and ignoring concomitant separation of powers concerns, the lead opinion does not suggest that application of the PCRA waiver provision to waived claims of mental incompetence is either unconstitutional or unreasonable. Indeed, no party has forwarded such an argument, since the only claim asserted arises under the Sixth Amendment. It is beyond perplexing that the lead opinion would reach out to do this violence to the PCRA.

My research has found one case from this Court, not cited or relied upon by the lead opinion, which has discussed the reviewability of claims of competence to stand trial upon collateral attack. *Commonwealth v. Nelson*, 489 Pa. 491, 414 A.2d 998 (1980) is a plurality opinion that was decided under the Post Conviction Hearing Act (PCHA), the statutory predecessor to the PCRA. In *Nelson*, the defendant was convicted of third-degree murder and he failed to appeal the verdict. He later filed a *pro se* petition under the PCHA alleging, among other things, that he was incompetent to stand trial. Counsel was appointed but inexplicably failed to amend the petition and failed to argue or develop the issues at the PCHA hearing, electing instead to present argument on two new issues at that hearing. On appeal to this Court, the defendant raised three arguments, all sounding in the ineffective assistance of counsel, including as his third claim that trial counsel was ineffective for failing to request a hearing on the defendant's competency to stand trial. *Id.* at 999.

The plurality opinion by Justice O'Brien recognized that the three issues on appeal were not properly raised and preserved in the PCHA proceeding below. The *Nelson* plurality accordingly held that the defendant's first two issues were waived. With respect to the ineffectiveness claim respecting competency, however, the *Nelson* plurality reasoned otherwise. Citing the same cases the lead opinion cites today, *i.e.*, *Marshall* and *Tyson*, the *Nelson* plurality noted that this Court had been "loath to find a waiver" of claims involving the mental competence of an accused. Unlike today's lead opinion, the *Nelson* plurality explicitly acknowledged that the PCHA waiver issue was distinct from the direct appeal paradigm and, also in contrast to today's lead opinion, the *Nelson* plurality did not *sua sponte* convert the claim of ineffectiveness into the underlying claim of competency to stand trial. The *Nelson* plurality reasoned as follows:

> It is, of course, true that *Tyson* . . . and *Marshall* . . . were direct appeals. . . . Nevertheless, our waiver doctrine, although judge-made and not statutory, is one we stringently apply. We have expressly discarded the fundamental

error rule.... Thus, while not recognizing fundamental error, we nevertheless will not permit the waiver of a claim of incompetency, so basic is it to our concepts of justice that a trial of an incompetent is no trial at all. Although we recognize the PCHA includes a waiver provision of its own ..., having held the competency of an accused to be an absolute and basic condition of a fair trial, we further hold the no-waiver rule in *Tyson* to be applicable here as well.

Instantly no competency hearing was held, nor was one requested. *The issue as it had survived for us, then, is not whether appellant would have passed the* two-pronged test for competency, it is rather only whether his counsel was ineffective for failing to raise the claim that he would not.

Since counsel elected not to argue this issue at the PCHA hearing, we have no record before us relevant to the claim of incompetency. The two psychiatric evaluations which are of record are concerned with the question of insanity and legal culpability. These are not the same as competency to stand trial. There is, moreover, no evidence of record indicating what information relative to appellant's competency may have been available to counsel, or what considerations prompted counsel not to seek a hearing on the issue.

Accordingly, the case is remanded for an evidentiary hearing to determine whether trial counsel had any reasonable basis for foregoing a claim of arguable merit. Following such hearing should the court determine trial counsel was ineffective for not requesting a competency hearing, it should order such a hearing. If no ineffectiveness is found, the judgment of sentence is affirmed.

414 A.2d at 1001 (footnote and citations omitted) (emphasis supplied).

As a plurality opinion, of course, *Nelson* has no precedential value. In addition, the *Nelson* plurality was construing the PCHA, not the PCRA, and the vitality of the decision is further diminished by this Court's extensive interpretations of PCRA waiver practice, including our decision in *Albrecht* which restored respect for the authority of the waiver provision. What is notable about *Nelson* is that, at the very same

time that the plurality reaffirmed the importance of providing an opportunity to inquire into an accused's competency, it also recognized that, once that claim has been foregone, the only appropriate inquiry must focus upon counsel's performance in failing to pursue it. The plurality did not *sua sponte* convert the ineffectiveness claim into the competency claim from which it derived.

Appellant here raises the same claim of counsel ineffectiveness that was at issue in *Nelson*. There is no reason in law or logic for this Court to convert it into the waived constituent claim from which it derives—a claim which appellant had a full opportunity to raise and as to which no contemporaneous record was made.

Here, the presumptively competent appellant was represented by presumptively competent counsel at the guilt phase of his second trial, by presumptively competent new counsel at the penalty phase, and by yet another new, presumptively competent counsel upon his direct appeal. There was nothing to prevent these lawyers—who were in the best position to determine whether there was a legitimate question of appellant's competence to stand trial—from raising a claim concerning competency if there were a factual basis for doing so. Since counsel did not challenge appellant's competence, the claim is waived under the PCRA. The only claim available to appellant now must sound in counsels' alleged ineffectiveness.

The practical effect of the rule posed by today's plurality would be to impose a burden upon prosecutors to take preemptive measures against meritless collateral claims of incompetence that are sure to follow from the lead opinion. Since prosecutors and trial judges will no longer be able to rely upon the presumption of competency, and the presumption that defense counsel are competent and ethical, the only way to protect against belated, meritless, collateral claims of incompetency will be to insist upon a pre-trial competency determination in all serious cases. It is ironic, to say the least, that the lead opinion adverts to this Court's recent attempts to make some sense of our capital PCRA jurisprudence in *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651

(2003) and *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003) in the same case in which it would reintroduce the arbitrariness occasioned by the wrongful application of this Court's relaxed waiver rule on capital PCRA matters, and that the lead opinion takes this backwards step *sua sponte.*

On the merits of the question of counsels' effectiveness for failing to allege appellant's incompetence to stand trial, the PCRA court's findings, the testimony of appellant's trial counsel, and the PCRA court's recollection of its own observations of appellant's interaction with counsel at the trial, prove that the claim lacks even arguable merit and therefore fails under *Strickland.* Because I agree that appellant is not entitled to relief on any of his other claims, I concur in the result.[6]

Justice EAKIN joins this concurring opinion.

## CONCURRING OPINION

Justice SAYLOR.

I concur in the result and write to make the following observations.

---

**6.** In passing upon appellant's other claims of ineffective assistance of counsel, the lead opinion does not make it plain that it appreciates that federal claims are at issue and that it is federal law which governs. Indeed, the lead opinion cites no federal cases. In the past, this Court's lack of clarity in this regard has led to avoidable complications when matters pass on to federal habeas corpus review. *See, e.g., Rompilla v. Horn,* 355 F.3d 233, 246–50 (3d Cir.2004); *Werts v. Vaughn,* 228 F.3d 178, 203 (3d Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001). In one instance, a Third Circuit panel inexplicably seized upon the failure of a Superior Court panel to include a citation to any federal case when applying this Court's familiar three-part formulation of the unitary *Strickland/Pierce* test as a reason to ignore the Superior Court's analysis of the ineffectiveness claim and the deferential standard of review required by AEDPA. *Everett v. Beard,* 290 F.3d 500 (3d Cir.2002), *cert. denied,* 537 U.S. 1107, 123 S.Ct. 877, 154 L.Ed.2d 777 (2003). As a matter of clarity and comity, and to facilitate appropriate federal habeas review should it occur, I would make it plain, where the lead opinion does not, that this Court recognizes that appellant presents his *Strickland* claims under federal law and that the test for ineffective assistance of counsel stated and applied herein is the same under the Pennsylvania Constitution as under the federal Constitution. *E.g. Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 855 (2003); *Rompilla, supra.*

First, I am able to join the lead opinion's affirmation of the PCRA court's retrospective competency assessment because Appellant has not demonstrated that the trial court improperly failed to make a determination of his competency in the course of the proceedings on his second trial. Although certainly there was information before the trial court implicating substantial mental infirmity on Appellant's part (schizophrenia), thus bringing competency into question, Appellant had been deemed competent upon hearing during the course of his first trial; Appellant did not seek a competency hearing in his second trial; and there appears to be no indicia of record demonstrating that the judge presiding at the second trial should have discerned a change in Appellant's mental condition. In these circumstances, I agree with the lead that the burden of proof was properly placed upon Appellant in the post-conviction proceedings concerning the retrospective competency assessment. Nevertheless, I would also note that in circumstances in which there was in fact an unjustified failure on the part of the trial court to make a contemporaneous determination of competency, a substantial argument can be made that the burden in connection with a retrospective competency assessment is more appropriately allocated to the government. *See James v. Singletary,* 957 F.2d 1562, 1571 (11th Cir.1992) (citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). I would therefore phrase the guiding standards to leave open this possibility.

Second, I disagree with the lead opinion's categorical statement to the effect that "[d]eclining to pursue a defense which has proven unsuccessful at an earlier trial is eminently reasonable." *Opinion Announcing the Judgment of the Court,* 579 Pa. at 71–72, 855 A.2d at 697. In my view, the reasonableness of such an approach depends integrally on the quality of the defense measured against that of available alternatives.

Finally, I view as a closer question, than does the lead, the issue of whether Appellant was entitled to a hearing concerning his allegations of ineffectiveness of penalty-phase counsel in failing to present life-history mitigation evidence. In this regard, I read the United States Supreme Court's recent

decision in *Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), as underscoring the potential import of life-history mitigation in capital sentencing determinations. *See, e.g., id.* at 534–35, 123 S.Ct. at 2542. On review of the affidavits submitted with Appellant's post-conviction petition, however, I ultimately agree with the PCRA court's apparent determination that Appellant failed to make a sufficient proffer of specific, life-history-type mitigation that, if believed, would undermine confidence in the jurors' weighing of aggravating versus mitigating circumstances in their selection determinations or, more generally, the reliability of the judgment of sentence.[1]

1. In terms of detail, the affidavits submitted by professionals offered little more than the same types of generalized references to Appellant's life history as were alluded to in the expert testimony presented at the penalty phase of trial. Moreover, no fact-witness affidavits were tendered with the post-conviction submission to develop the asserted neglect and abuse (principally, the fact affiants attested to unusual behaviors on the part of Appellant which reflected his mental illness, which, as the lead opinion notes, was developed as of record in the penalty phase). It is also noteworthy that the allusions that were made at the penalty phase to life-history mitigation had mixed implications, since a defense expert held the view that Appellant had, at least at one point, sought to rely on his background manipulatively. *See* N.T., Sept. 8, 1992, at 332–33.