Willie REYNOLDS, Appellee,

v.

Larry NORRIS, Arkansas Department
of Correction, Appellant.

No. 95–3154.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1996.

Decided June 13, 1996.

Olan W. Reeves, Little Rock, AR, argued (Todd L. Newton, on the brief), for appellant.

David O. Bowden, Little Rock, AR, argued for appellee.

Before WOLLMAN, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Larry Norris, the Director of the Arkansas Department of Correction, appeals the order of the district court granting Willie Reynolds his petition for a writ of habeas corpus.[1] The district court determined that sufficient doubt existed concerning Reynolds' competency at the time of trial to require a further competency hearing and ordered that the writ of habeas corpus be issued and Reynolds be discharged, unless the State of Arkansas elected to retry him within 120 days. Norris appeals, asserting that there exists insufficient evidence of a change in circumstances between the pre-trial competency hearing and the trial itself to warrant a further hearing. Although we agree with the determination of the district court that the state trial court should have granted a competency hearing during the trial, this conclusion does not require the issuance of the writ at this time. Accordingly, we vacate the order granting the writ and remand the case to the district court to conduct a hearing on Reynolds' competency at the time of trial.

## I. BACKGROUND

A jury convicted Reynolds of the murder of Lewis McElyea. Prior to the murder, Reynolds' girlfriend, Mae Paul, had been living with McElyea and his wife. Paul, who has an obvious mental disability, was approximately seventy-five years old at the time. On the night of the murder, Paul met Reynolds and allegedly told him that McElyea had stolen her blouse, taken money from her, and molested her. Reynolds was drinking heavily that night. Reynolds went to McElyea's house where, after confronting McElyea about the accusations, he repeatedly struck McElyea in the head with a claw hammer. Reynolds then removed some money from the house and left with Paul. After his arrest, Reynolds admitted that he had killed McElyea but claimed that he acted in self-defense because McElyea had brandished a firearm during the confrontation.

Reynolds was approximately fifty years old at the time of his arrest. He has an I.Q. in the 76–80 range and has a long history of mental illness and alcohol abuse. He has had numerous problems with the law, including an acquittal by mental disease or defect in 1982, and has been treated at the Arkansas State Hospital on several occasions.[2] Reynolds has been diagnosed as either paranoid schizophrenic or schizoid affective.

In November of 1989, Reynolds entered a plea of not guilty by reason of mental defect. On January 26, 1990, he was admitted to the Arkansas State Hospital for evaluation. Following a month of observation, Drs. Wendell

---

1. Pursuant to an agreement between the parties, the matter was referred to a magistrate judge for disposition. See 28 U.S.C. § 636(c).

2. Reynolds' forensic report indicated that this was his sixth admission to the Arkansas State Hospital since May of 1979. Reynolds was admitted to NAPA State Hospital in California in August 1977. He apparently had four admissions relating to alcohol abuse with the California Department of Mental Hygiene between June 3, 1969 and January 5, 1970. The report indicated that Reynolds' reluctance to sign release of information forms made a complete psychiatric history difficult to compile.

Hall and Michael Simon of the state hospital submitted a report to the court stating that Reynolds was unfit to proceed to trial because he was unable to cooperate effectively with an attorney in the preparation of his defense. Reynolds was then committed to the state hospital for treatment. As part of his treatment, Reynolds was placed on medication and enrolled in a "competency class."[3] After Reynolds completed about nine months of treatment, Dr. Hall submitted a letter indicating that Reynolds had improved and was fit to proceed. Reynolds was subsequently discharged from the hospital and placed in the county jail.

The trial court held its first competency hearing on November 9, 1990. Dr. Hall was the sole witness at the hearing. Dr. Hall testified that although Reynolds had a serious mental illness, he possessed the ability to assist his attorney and to understand the nature and purpose of the proceedings against him. Dr. Hall indicated that Reynolds was being treated with medication, and that his condition could deteriorate if he failed to continue on the medication. At the close of the hearing, the trial court found Reynolds competent to stand trial, and scheduled a trial date.

On April 25, 1991, the court granted Reynolds' motion for a re-examination at the state hospital. Reynolds entered the hospital on July 15th for a thirty-day period of observation. Reynolds was last interviewed at the hospital on August 13th. A second competency hearing was held on October 4, 1991. Drs. Hall and Simon and petitioner Reynolds testified at the hearing. Dr. Simon testified that he was concerned with Reynolds' ability to cooperate with his attorney. He concluded that although he considered Reynolds to be competent, it was "not a clear cut case." Dr. Hall testified that Reynolds was "fit to proceed" at this time, although he did indicate that Reynolds had not taken his medication while in jail. The trial court again found Reynolds competent to proceed to trial.

Reynolds requested a third competency hearing on December 16, 1991. The court denied the request, and the trial convened on February 25, 1992. Prior to the commencement of testimony, Reynolds' counsel reiterated that they believed Reynolds was not competent to stand trial and that they anticipated requesting further evaluation after the testimony of their expert at trial.

Reynolds testified in his own behalf at trial. Dr. James Moneypenny, a psychologist, also testified for the defense. Dr. Moneypenny stated that based on Reynolds' medical records, the reports of Drs. Hall and Simon, and his own three examinations of Reynolds between November 1991 and February 1992, Reynolds was not competent to stand trial. Dr. Moneypenny testified that Reynolds' testimony at trial showed "significant delusion." In rebuttal, Dr. Hall testified that petitioner was competent to stand trial, although Dr. Hall's testimony did not specifically evaluate Reynolds' condition on the day of trial. The trial court made no express findings concerning Reynolds' competency.

The jury convicted Reynolds of the murder, and the conviction was upheld on appeal. *Reynolds v. State*, 310 Ark. 688, 840 S.W.2d 795 (1992). After the state courts denied his claims for post-conviction relief, Reynolds filed a petition for habeas corpus in the federal court under 28 U.S.C. § 2254.

The district court determined that circumstances had changed since the second competency hearing such that the trial court should have suspended the trial and granted Reynolds' motion for a further evaluation. The district court concluded that a reasonable judge, situated as was the trial court judge, should have had a substantial doubt as to whether Reynolds had a rational understanding of the proceedings. The district court then ordered that the writ of habeas corpus be issued and that Reynolds be discharged unless the state elected to retry him.

## II. DISCUSSION

### A. Failure To Hold a Competency Hearing

 "It is well established that the Due Process Clause of the Fourteenth Amend-

---

**3.** A competency class reviews information about the roles of different courtroom participants and what constitutes appropriate behavior in the courtroom. The course also addresses other is-

sues, including acquittal or nolle prossing charges, and different plea options that are available, including the insanity plea. (App. at A–63, 231–32).

ment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California,* 505 U.S. 437, 439, 112 S.Ct. 2572, 2574, 120 L.Ed.2d 353 (1992) (citing *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) and *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). In order to be competent to stand trial one must have "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope,* 420 U.S. at 171, 95 S.Ct. at 903. A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

■ " 'Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.' " *Cooper v. Oklahoma,* — U.S. —, —, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996) (quoting *Riggins v. Nevada,* 504 U.S. 127, 139–40, 112 S.Ct. 1810, 1817, 118 L.Ed.2d 479 (1992) (Kennedy, J. concurring)). "[A]n erroneous determination of competence threatens a 'fundamental component of our criminal justice system'—the basic fairness of the trial itself." *Id.* at —, 116 S.Ct. at 1381 (citation omitted).

■ To safeguard this due process guarantee, the Supreme Court has established a separate procedural due process right to a competency hearing. *Drope,* 420 U.S. at 172, 95 S.Ct. at 904; *Griffin v. Lockhart,* 935 F.2d 926, 929 (8th Cir.1991). Due process requires the trial court to hold a competency hearing, either on motion or sua sponte, whenever evidence raises a "sufficient doubt" about the accused's mental com-

petency to stand trial.[4] *Branscomb v. Norris,* 47 F.3d 258, 261 (8th Cir.) (citing *Griffin,* 935 F.2d at 929), *cert. denied,* — U.S. —, 115 S.Ct. 2260, 132 L.Ed.2d 266 (1995); *United States v. Day,* 949 F.2d 973, 981 (8th Cir.1991). Any time evidence appears which raises a sufficient doubt about the accused's mental competency, the trial court must order a competency hearing. *See Speedy v. Wyrick,* 702 F.2d 723, 727 (8th Cir.1983). As the Supreme Court noted in *Drope,* "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." 420 U.S. at 181, 95 S.Ct. at 908.

■ While the Supreme Court has not described the precise quantum of proof necessary to establish sufficient doubt, it has indicated that the trial court should consider (1) evidence of irrational behavior by the accused, (2) the accused's demeanor at trial, and (3) any prior medical opinion as to the mental competency of the accused to stand trial. *Branscomb,* 47 F.3d at 261; *Griffin,* 935 F.2d at 930; *Speedy,* 702 F.2d at 727. Additionally, the trial court may consider an express doubt by the accused's attorney, although such doubt alone is not enough to establish sufficient doubt. *Branscomb,* 47 F.3d at 261; *Griffin,* 935 F.2d at 930.

■ On habeas review of a substantive competency claim, this court generally presumes that a state court's factual finding of competency is correct. *Weisberg v. Minnesota,* 29 F.3d 1271, 1278 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 935, 130 L.Ed.2d 880 (1995); *Griffin,* 935 F.2d at 930. But that presumption of correctness does not apply if the accused "did not receive a full, fair, and adequate hearing" or "was otherwise denied due process of law in the State court proceeding." 28 U.S.C. § 2254(d)(6), (7) (1994); *see also Griffin,* 935 F.2d at 930.

■ On habeas review of a procedural competency claim, the court asks whether a

---

4. Although other terms have been used to describe the quantum of doubt required to command a hearing, we have adopted the phrase

"sufficient doubt" for the reasons set out in *Griffin,* 935 F.2d at 929 n. 2.

reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to the defendant's competency to stand trial. *Branscomb v. Norris,* 47 F.3d at 261; *Griffin,* 935 F.2d at 930. The habeas petitioner has the burden to prove that objective facts known to the trial court raised a sufficient doubt to require a competency hearing. *Branscomb,* 47 F.3d at 261; *Speedy,* 702 F.2d at 725.

The trial court held two competency hearings prior to trial at which it found Reynolds competent to stand trial. Reynolds does not challenge those substantive findings on appeal. Reynolds' claim is that the trial court should have granted another hearing immediately prior to or during the trial. Thus the issue is not whether Reynolds was competent to stand trial, but whether the failure to hold a hearing to determine competency constituted a denial of due process. To require this third hearing, Reynolds must show facts such that a reasonable trial judge should have experienced doubt about the accused's continued competency to stand trial. We agree with the determination of the district court that a reasonable judge, situated as was the trial court judge, should have had sufficient doubt as to Reynolds' competency at the time of trial.

Reynolds' meandering and irrational testimony at trial evidenced that his condition had deteriorated. During his testimony, Reynolds stated that the Defense Department was involved in his case and cited the Gulf War, among other things, as a reason for his being on trial. The following excerpt exemplifies Reynolds' testimony:

*Counsel:* I understand that. That's good. I've got volumes of things you've sent me, Willie. Can you just pick any one thing out and tell me how it relates to your case? Anything at all? I mean—

*Reynolds:* (No response from the witness).

*Counsel:* Is there anything? Can you point to any of the news clippings that you've sent me marked as exhibits? Why have you sent those to me?

*Reynolds:* Well, they deal with President Bush.

*Counsel:* Huh?

*Reynolds:* And really it is a balanced budget and reached no final decision by Washington or President Bush.

*Counsel:* What?

*Reynolds:* As far as a balanced budget. Granted by the government and the Reagan party.

*Counsel:* Do these things fit in with the incidents that happened surrounding you and Mae Paul?

*Reynolds:* Yes. Since Bill Clinton became governor again here in the state. Evidently, he's just like New York governors or California governors, always increasing the taxes, double tax and everything. He increased (unintelligible). Well, criminality and terrorism happening almost daily here in Arkansas. It's too far out of hand.

*Counsel:* And you—Again, in your statement to the police you mentioned the Defense Department. Do you think you have anything to do with the Defense Department in this case right here?

*Reynolds:* Well, when I was a child here, born of my god here. Whenever I was born by my mother and father, he used to work for the State Department in Washington, D.C., and he was court appointed, acting judge in El Dorado. He also helps out the police academy training center in east Camden.

(App. at 169–70). Neither the psychiatric reports nor the testimony of the expert witnesses gave any indication that Reynolds may have been malingering.

The trial testimony of Dr. Moneypenny provided further reason for the trial judge to doubt Reynolds' competency on the day of trial. Dr. Moneypenny indicated that he agreed with Reynolds' diagnosis as a chronic paranoid schizophrenic and stated that he believed that Reynolds was "significantly impaired." (App.191). Dr. Moneypenny testified that Reynolds' inability to talk for any length of time without unrelated or peripherally related ideas coming into the conversation "effectively obscur[ed] any substantive data gathering," even for a person trained in counseling techniques. (App. at 189). He

further stated that Reynolds' thinking was "disordered and confused", that "his ability to know what's real and factual is impaired", and that he was "dramatically influenced by his delusions" (App. at 190–91). Dr. Moneypenny concluded:

I don't think he can provide substantive assistance. His thinking is so affected by these delusions, these misperceptions of reality, this obsessive preoccupation with world events, political events, that even if they were accurate—Well, they're not accurate, and that's the whole point. He's obsessively concerned with these things that he doesn't understand and misperceives. It permeates all of his thinking. I don't think he can be of substantial assistance because of that.

(App. at 191–92).

Dr. Moneypenny's testimony, moreover, provides direct evidence of a change in Reynolds' competency. Dr. Moneypenny based his testimony on his own examination of Reynolds, the reports of Drs. Hall and Simon, and Reynolds' medical records. (App. at 185–86).

*Counsel:* Do you agree or disagree with Dr. Simon that Willie Reynolds is fit and ready to go to trial today?

*Moneypenny:* I disagree with that assessment.

*Counsel:* Do you have any particular and articulable reasons why you disagree that you could explain to the jury?

*Moneypenny:* I think the primary one is that I've seen him more recently, and even if I totally agreed with the previous report, his current behavior, I think, takes precedence on that issue.

(App. at 192–93). Dr. Moneypenny examined Reynolds on three occasions between November of 1991 and February of 1992. The last time Reynolds was examined at the state hospital was in August of 1991. Finally, Dr. Moneypenny stated that Reynolds' testimony *at trial* showed significant delusions. (App. at 214).

Thus, at the time of trial, the trial court was aware that Reynolds had a serious mental illness, that Dr. Simon had previously testified that Reynolds' competency was not clear cut, that Reynolds was no longer on medication, and that Reynolds had not been evaluated at the state hospital in almost six months. At the beginning of the trial, Reynolds' counsel asserted that Reynolds was not competent to stand trial. Given these disquieting predicates, the two new factors, Reynolds' incoherent testimony and the professional opinion of Dr. Moneypenny that Reynolds was delusional *at trial*, should have created sufficient doubt in the trial judge's mind as to Reynolds' continuing competency to stand trial. By failing to halt the trial and make a new determination of competency, the trial court violated Reynolds' right to due process.

## B. Appropriate Remedy

██ While the district court correctly concluded that the failure to hold a further competency hearing violated due process, the court's determination that "it is impossible to conduct a nunc pro tunc competency hearing now" is not supported by the record. Under the particular circumstances present in this case, a post-conviction competency hearing is the appropriate remedy for the constitutional violation.

██ While we acknowledge that post-conviction determinations of competency are hampered by inherent difficulties, *see Griffin,* 935 F.2d at 931, we have held that a post-conviction competency hearing is proper so long as a meaningful hearing remains possible. *Rhode v. Olk–Long,* 84 F.3d 284 (8th Cir.1996); *Harkins v. Wyrick,* 552 F.2d 1308, 1311 (8th Cir.1977) ("If, however, a meaningful hearing on the question of competency is still possible, a *nunc pro tunc* competency hearing rather than a vacation of the conviction is the proper remedy for wrongful denial of a pretrial hearing.") A "meaningful" determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original state proceedings. *U.S. ex rel. Bilyew v. Franzen,* 842 F.2d 189, 192 (7th Cir.1988).

When determining whether a meaningful hearing may be held, we look to the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records. *Wheat v. Thigpen,* 793 F.2d 621, 630–31 (5th Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987). The passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available. *U.S. ex rel. Bilyew,* 842 F.2d at 193.

Reynolds was treated and evaluated at the state hospital prior to trial. Those records, and the records of his extensive history of psychiatric problems, are available to the court. Drs. Simon and Hall, both of whom personally examined Reynolds, may also be available as witnesses to supplement these records. Dr. Moneypenny may also be available as a witness, and his testimony at trial concerning his examinations of Reynolds and his opinion as to Reynolds' competency on the day of trial is contained in the trial transcript. Moreover, the trial transcript contains Reynolds' own testimony. Finally, the witnesses, trial counsel, and other observers could testify as to Reynolds' demeanor and conduct on the day of trial. Given the unusual amount of contemporaneous evidence specifically relating to Reynolds' competency at the time of trial, we conclude that there exists a sufficient basis from which to make a retrospective competency determination.

### III. CONCLUSION

Accordingly, we reverse and vacate the issuance of the writ as premature and remand the case to the district court to conduct a hearing on Reynolds' competency at the time of trial.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. I believe the district court should be affirmed and that Willie Reynolds should be granted a new trial. More than four years have elapsed since Reynolds' state court trial. As thoroughly discussed by the majority, Reynolds' trial testimony and the expert opinion of Dr. Moneypenny should have created sufficient doubt in the trial judge's mind as to Reynolds' competency to stand trial. Thus, I fully agree with the majority's conclusion that the trial court violated Reynolds' right to due process by proceeding to trial without a competency determination.

I disagree, however, that the appropriate remedy for the state court's error is a competency hearing four years post-trial. We cannot now put the genie back in the bottle and make a meaningful determination as to what Reynolds' mental state was in 1992. Rather, as the district court held, the appropriate remedy in this case is to reverse Reynolds' conviction and permit the state to retry him if it is determined that Reynolds is presently competent to stand trial.