# Supreme Court of Florida

_____

No. SC18-681
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**VERNSON EDWARD DORTCH,**
Respondent.

May 20, 2021

MUÑIZ, J.

A Florida rule of appellate procedure requires a criminal defendant to file a motion to withdraw the plea in the trial court before appealing an involuntary plea. This case presents a certified conflict over whether there is a "fundamental error" exception to that rule. We hold that there is no such exception. A defendant who does not comply with the rule's preservation requirement must seek any available relief through collateral review.

I.

A. Facts and Procedural Background

On August 3, 2016, Vernson Dortch pleaded no contest to charges of possession of a firearm by a convicted felon, dealing in stolen property, aggravated assault by a detainee with a deadly weapon, and introducing contraband into a county detention facility. The plea, which resolved two cases then pending against Dortch, was against the advice of counsel.

Dortch gave appropriate answers to the trial court's questions at the plea hearing. The trial court stated on the record that he found the plea to be "freely and voluntarily given" and that Dortch "under[stood] the nature and consequences of it." Dortch's counsel signed the felony plea form, confirming that counsel "consider[ed] [Dortch] competent to understand the charges against [him] and the effect of the plea entered by this document."

About two weeks later, the trial court held a sentencing hearing. After hearing from Dortch and from one of the victims of Dortch's crimes, the court imposed a ten-year prison sentence, including a three-year mandatory minimum. The next day, Dortch's counsel filed a notice of appeal. Notwithstanding the

preservation requirement of Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(c), which we discuss in detail below, Dortch did not first file a motion to withdraw his plea.

Dortch's appeal centered on events that happened months before the plea hearing, when the case was before a different judge and Dortch was represented by different counsel. On October 30, 2015, Dortch's then-counsel had filed a written "Motion for Examination of Defendant" under Rule of Criminal Procedure 3.210(b). The motion requested the appointment of an expert to examine Dortch "on the issue of competence to proceed." As required by rule 3.210(b)(1), the motion included a certification that Dortch's counsel had "reasonable grounds to believe that [Dortch] is incompetent to proceed."

We do not know the factual basis for defense counsel's belief. Rule 3.210(b)(1) says: "To the extent that it does not invade the lawyer-client privilege, the motion shall contain a recital of the specific observations of and conversations with the defendant that have formed the basis for the motion." As to this requirement, defense counsel's motion said: "[T]he undersigned cannot allege further as any recitation of specific observations of and

conversations with the Defendant would invade the lawyer-client privilege."

All of that is unremarkable. The irregularity is that defense counsel's motion also said that "the defendant hereby waives the required 20 day hearing, pursuant to Fla. R. Crim. P. 3.210(b)." This was a reference to the rule's requirement that the court hold a competency hearing within 20 days if the court "has reasonable ground to believe that the defendant is not mentally competent to proceed."

The trial court (again, a different judge from the one who months later would take Dortch's plea) entered an order that granted defense counsel's motion and appointed a psychologist to examine Dortch. The court used a form order, with pre-printed information and blank spaces that could be marked. In pre-printed text, paragraph 5 of the form order gave notice of the 20-day hearing requirement of rule 3.210(b). But beneath that notice, the trial court added: "The Defendant hereby waives this provision and shall schedule a competency hearing pursuant to the Florida Rules of Criminal Procedure should it become necessary, with notice to the State and Court."

The order did not say that the court had reasonable ground to believe that Dortch was incompetent to proceed. Nor did the order recite any facts about Dortch's behavior or mental condition. Instead, the order simply checked the box indicating that the matter was before the court on motion by defense counsel.

The record does not indicate that the trial court ever held a hearing to determine Dortch's competence. Nor does the record indicate whether Dortch's examination took place or the results of any such examination.

### B. The Fourth District's Decision

The Fourth District ruled on Dortch's appeal in a unanimous en banc decision. *Dortch v. State*, 242 So. 3d 431, 433 (Fla. 4th DCA 2018). Citing rules 3.210(b) and 3.212(b), the district court first held that "[o]nce a trial court has reasonable grounds to believe the defendant is incompetent and orders an examination, it must hold a hearing and it must enter a written order on the issue." *Id.* The district court concluded that the trial court violated these rules here and that it had thereby committed "fundamental error." *Id.*

The Fourth District further held that, in these circumstances, "it is not necessary that a defendant first file a motion to withdraw plea." *Id.* The district court reasoned:

> To require a criminal defendant, who may be incompetent, to file a motion to withdraw a plea before raising the issue on appeal is unwarranted. If a defendant is incompetent, confining him to post-conviction relief, without the assistance of counsel, is not a remedy designed to do justice.

*Id.* As a remedy, the Fourth District remanded the case with instructions to determine Dortch's competence nunc pro tunc, if possible. If not, the judgment and sentence were to be vacated and the case set for trial. *Id.*

The Fourth District certified conflict with the decisions in *Pressley v. State*, 227 So. 3d 573 (Fla. 1st DCA 2017); *Garcia-Manriquez v. State*, 146 So. 3d 134 (Fla. 3d DCA 2014); and *Hicks v. State*, 915 So. 2d 740 (Fla. 5th DCA 2005). We accepted jurisdiction to resolve the conflict.

## II.

On the conflict issue, the State argues that the Fourth District erred by holding that Dortch could directly appeal his convictions without first filing a motion to withdraw his plea. We agree. There

is no fundamental-error exception to the applicable preservation requirement.

A. *Robinson* and the Criminal Appeal Reform Act of 1996

This Court's leading decision on the right to appeal after pleading guilty or nolo contendere is *Robinson v. State*, 373 So. 2d 898 (Fla. 1979).[1] We held in *Robinson* that "[t]here is an exclusive and limited class of issues which occur contemporaneously with the entry of the plea that may be the proper subject of an appeal." *Id.* at 902. We characterized those issues as ones that stem from "conduct that would invalidate the plea itself." *Id.*

*Robinson*'s list of appealable issues includes "only the following: (1) the subject matter jurisdiction, (2) the illegality of the sentence, (3) the failure of the government to abide by the plea

---

1. *Robinson* involved a constitutional challenge to the following provision, which the Legislature had enacted in 1976: "A defendant who pleads guilty or nolo contendere with no express reservation of the right to appeal shall have no right to a direct appeal. Such a defendant shall obtain review by means of collateral attack." Ch. 76-274, § 7, Laws of Fla.; § 924.06(3), Fla. Stat. (Supp. 1976). We upheld the statute, concluding that its prohibitions "are directed to pretrial rulings and not to matters which may occur contemporaneously with" the plea. *Robinson*, 373 So. 2d at 900. We concluded that the Legislature had done "no[thing] more than codify the existing case law on the subject." *Id.*

agreement, and (4) the voluntary and intelligent character of the plea." *Id.* at 902.

Importantly for this case, we further held in *Robinson* that "an appeal from a guilty plea should *never* be a substitute for a motion to withdraw a plea." *Id.* (emphasis added). To illustrate the point, we said: "If the record raises issues concerning the voluntary or intelligent character of the plea, that issue should first be presented to the trial court in accordance with the law and standards pertaining to motions to withdraw a plea." *Id.* Our decision in *Robinson* thus determined that the state constitutional right to appeal does not include the right to appeal an involuntary plea without first filing a motion to withdraw plea.

Nearly two decades after we decided *Robinson*, the Legislature enacted the Criminal Appeal Reform Act of 1996. Among its provisions was the following:

> If a defendant pleads nolo contendere without expressly reserving the right to appeal a legally dispositive issue, or if a defendant pleads guilty without expressly reserving the right to appeal a legally dispositive issue, the defendant may not appeal the judgment or sentence.

Ch. 96-248, § 4, Laws of Fla.; § 924.051(4), Fla. Stat. (Supp. 1996). Despite the categorical language of the text, in *Amendments to the*

- 8 -

*Florida Rules of Appellate Procedure*, 696 So. 2d 1103, 1105 (Fla. 1996) (*1996 Amendments*), we held that "[a] defendant must have the right to appeal that limited class of issues described in *Robinson*."

In response to the 1996 Act, this Court amended the Rules of Appellate Procedure to codify *Robinson*'s limited list of appealable issues and its requirement that a defendant file a motion to withdraw plea before appealing an allegedly involuntary plea. *Id.* We also announced our adoption of Rule of Criminal Procedure 3.170(*l*), "which authorizes the filing of a motion to withdraw the plea after sentencing within thirty days from the rendition of the sentence, but only upon the grounds recognized by *Robinson* or otherwise provided by law." *Id.* We said that we were adopting the new rule 3.170(*l*) "[c]onsistent with the legislature's philosophy of attempting to resolve more issues at the trial court level." *Id.*

### B. Voluntariness and Rule 9.140(b)(2)(A)(ii)(c)

Dortch's appeal is governed by Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(c)—again, the rule through which we codified *Robinson* and responded to the 1996 Act. That rule allows a defendant to appeal "an involuntary plea, if preserved by a motion

to withdraw plea." Accordingly, we begin by addressing the threshold question whether Dortch's claim goes to the voluntariness of his plea.[2]

As we will explain in detail, Dortch claims that he had a procedural due process right to a determination of his competence before the trial court accepted his no contest plea. "The nature of competency goes to the heart of whether a defendant has the capacity to make a cogent, legally binding decision." *Sheheane v. State*, 228 So. 3d 1178, 1181 (Fla. 1st DCA 2017). And we have said that a plea "must be voluntarily made by one competent to know the consequences of that plea and must not be induced by promises, threats, or coercion." *Mikenas v. State*, 460 So. 2d 359, 361 (Fla. 1984). Because a voluntary plea requires a competent defendant, we conclude that Dortch's appeal claims an "involuntary

---

2. Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii) says that, absent reservation, a "defendant who pleads guilty or nolo contendere may otherwise directly appeal only: a. The lower tribunal's lack of subject matter jurisdiction; b. a violation of the plea agreement, if preserved by a motion to withdraw plea; c. an involuntary plea, if preserved by a motion to withdraw plea; d. a sentencing error, if preserved; or e. as otherwise provided by law."

plea" for purposes of the rule and that we must therefore proceed to address the rule's preservation requirement.

C. Preservation and Rule 9.140(b)(2)(A)(ii)(c)

The Fourth District concluded that the trial court had erred by not holding a competency hearing before accepting Dortch's plea and that this was fundamental error. It further concluded that, because the trial court had committed fundamental error, it was not necessary for Dortch to file a motion to withdraw plea before pursuing a direct appeal.

1.

A threshold issue in addressing any claim of fundamental error is whether there was error at all—"fundamental" or not. Dortch's claim of error in this case warrants discussion.

"[T]he conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966). In *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993), the Supreme Court held that the constitutional standard for competence to plead guilty is the same as the standard for competence to stand trial, as established in *Dusky v. United States*, 362 U.S. 402 (1960). That standard asks "whether the defendant

has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396 (citation omitted).

In this case, Dortch does not allege a violation of his right not to be proceeded against while incompetent. He instead asserts that he "may have been and may still be incompetent." Dortch thus invokes the separate "procedural due process" right that the Supreme Court established in *Pate* and in *Drope v. Missouri*, 420 U.S. 162, 172 (1975).[3]

The Supreme Court in *Pate* held that "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope*, 420 U.S. at 172 (explaining *Pate*'s holding). But the Court did not "prescribe a general standard with respect to the nature or quantum of evidence necessary to

---

3. To be clear, *Pate* and *Drope* addressed the circumstances in which a defendant has a constitutional right to procedures to protect his right not to be tried while incompetent. Those cases did not involve a right to appeal or due process rights in the appellate context.

- 12 -

require resort to an adequate procedure." *Id.* at 172. Instead, the question in every case is whether the information known to the trial court "create[s] a sufficient doubt of [the defendant's] competence to stand trial to require further inquiry on the question." *Id.* at 180.

In *Drope*, the Supreme Court cautioned that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id.* Factors that the Supreme Court deemed relevant to determining whether further inquiry is required include "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Id.*

One thing is clear: while defense counsel's views about a defendant's competence are important, the Supreme Court in *Drope* rejected the notion that "courts must accept without question a lawyer's representation concerning the competence of his client." *Id.* at 177 n.13. Federal circuit courts applying *Drope* have held that mere assertions of defense counsel, without more, do not trigger a defendant's constitutional right to competency

- 13 -

proceedings. *See, e.g., United States v. Abdulmutallab*, 739 F.3d 891, 901 (6th Cir. 2014) (competency hearing not constitutionally required where defense counsel's motion "did not provide sufficient factual details that would cause the court to question Abdulmutallab's competency"); *Bryson v. Ward*, 187 F.3d 1193, 1202 (10th Cir. 1999) ("[T]he concerns of counsel alone are insufficient to establish doubt of a defendant's competency."); *Reynolds v. Norris*, 86 F.3d 796, 800 (8th Cir. 1996) (same).

We have long recognized that rule 3.210 establishes the procedures through which Florida complies with the mandate of *Drope* and *Pate* and protects a defendant's right not to be proceeded against while incompetent. *See Lane v. State*, 388 So. 2d 1022, 1025 (Fla. 1980). In *Lane* we explained that "[t]he law is now clear that the trial court has the responsibility to conduct a hearing for competency to stand trial whenever it appears reasonably necessary, whether requested or not, to ensure that a defendant meets the standard of competency set forth in *Dusky*." *Id.*

Consistent with *Drope* and *Pate*, rule 3.210(b) requires a hearing when the trial court "has reasonable ground to believe that the defendant is not mentally competent to proceed." Once that

predicate is established, rule 3.210 says that the trial court "shall" hold a competency hearing within 20 days and that it "may" order a psychological examination. Given the text of the rule, and reading the rule in light of *Drope* and *Pate*, the "reasonable ground" test is an objective one that looks at the information available to the trial court at the relevant time in the proceedings.

Whether the trial court erred in Dortch's case, and if so whether any error was of constitutional dimension, would present an issue of first impression for our Court. Here, the only record "evidence" of Dortch's potential incompetence was his initial counsel's unelaborated representation to that effect—a representation that counsel undermined by simultaneously waiving a hearing (at least pending the psychological evaluation). Other evidence in the record cuts against the argument that there existed "reasonable ground" to question Dortch's competence. Most importantly, Dortch's second counsel affirmed that Dortch was competent at the time of his plea, and the trial judge who

conducted the plea colloquy also found Dortch competent to enter his plea.[4]

Dortch is thus left to argue that the due process violation in this case consists of the trial court deviating from rule 3.210 by "ordering an evaluation of [Dortch's] competency but then accepting his plea without conducting a competency hearing or making a competency determination." This argument presents a question that this Court has never addressed: does a trial court's decision to order a psychological evaluation create a *constitutional* entitlement to a subsequent competency hearing, regardless of whether the information available to the trial court met the evidentiary threshold

---

4. For context, consider the contrast with the evidence that triggered the right to a competency determination in *Drope* and *Pate*. The defendant in *Drope* tried to choke his wife to death on the eve of trial and then shot himself in a suicide attempt on the morning of the second day of trial. *Drope*, 420 U.S. at 162. In *Pate*, the trial court had been presented with the testimony of four witnesses showing that the defendant "had a long history of irrational behavior," including a suicide attempt and the murder of his 18-month-old son. *Pate*, 383 U.S. at 378-81.

for invoking the rule 3.210 competency procedures in the first place?[5]

Several variables specific to this case would potentially be relevant to answering the question. Dortch's counsel asked for an evaluation but explicitly waived a hearing. The trial court granted the psychological examination without making any explicit finding about whether there was "reasonable ground" to question Dortch's competency. And neither the record nor the court's order discloses any details about Dortch's condition or behavior that would have supported such a finding.

In any event, there is no need for us here to resolve the question whether (and if so how) the trial court erred by failing sua sponte to hold a competency hearing. Dortch did not comply with the preservation requirement of rule 9.140(b)(2)(A)(ii)(c). Accordingly, for the court of appeal to have considered Dortch's claim of error at all, there would have to be a fundamental-error

---

5. This Court's decision in *Dougherty v. State*, 149 So. 3d 672 (Fla. 2014), in which we emphasized the importance of compliance with rule 3.210(b), sheds no light on this issue. The defendant in *Dougherty* had been adjudicated incompetent, and the issue was whether defense counsel could subsequently stipulate that the defendant's competence had been restored. *Id.* at 673.

exception to the rule.  We next explain why there is no such exception.

2.

To put the preservation issue in context, we begin with some observations about the fundamental error doctrine itself. "Fundamental error" is a label for error that an appellate court will remedy even though the claim was not preserved in the court below. Appellate courts will not find fundamental error unless the error meets some threshold level of seriousness.[6]  But courts (including this Court) have articulated the fundamental error test in different ways depending on the context.  *See Maddox v. State*, 760 So. 2d 89, 99 (Fla. 2000) ("It is no secret that the courts have struggled to establish a meaningful definition of 'fundamental error' that would be predictive as compared to descriptive.") (quoting *Denson v. State*, 711 So. 2d 1225, 1229 (Fla. 2d DCA 1998)).  We will not muddy the waters even more by attempting to make sense of or harmonize the various tests here.

---

6. "Courts and lawyers well know the meaning of fundamental error—a mistake in a proceeding substantial enough to abrogate the need for contemporaneous objection." *Thomas v. State,* 894 So. 2d 1000, 1002 (Fla. 1st DCA 2005).

That said, two overarching conceptual points about the fundamental error doctrine are central to this case. First, a defendant has no constitutional due process right to the correction of unpreserved error. "No procedural principle is more familiar," the Supreme Court has observed, "than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (citation omitted).

Courts developed the fundamental error doctrine as a matter of grace, not because of any entitlement on the part of criminal defendants. We have said that an "appellate court should exercise its *discretion* under the doctrine of fundamental error very guardedly." *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970) (emphasis added). And we have explained: "The reason that courts correct error as fundamental despite the failure of the parties to adhere to procedural rules regarding preservation is not to protect the interests of a particular aggrieved party, but rather to protect the interests of justice itself." *Maddox*, 760 So. 2d at 98.

The second overarching point is that there is no ironclad rule that *every* preservation requirement must have an unwritten exception allowing the appellate court to correct an unpreserved error. For example, Rule of Appellate Procedure 9.140(e) says that "[a] sentencing error may not be raised on appeal" unless preserved by a contemporaneous objection or by filing a motion under Rule of Criminal Procedure 3.800(b). In *Jackson v. State*, 983 So. 2d 562, 569 (Fla. 2008), we interpreted this rule to mean that "for sentencing errors, to raise even fundamental errors on appeal, defendants must first file a motion under rule 3.800(b)." There *is* such a thing as a truly mandatory preservation requirement.

With these considerations in mind, we can turn again to rule 9.140(b)(2)(A)(ii)(c). The Fourth District held that it could apply a "fundamental error" exception in this case. For several reasons, we disagree.

First, recall where rule 9.140(b)(2)(A)(ii)(c) came from. The rule codified our decision in *Robinson*. And in *Robinson* we said that "an appeal from a guilty plea should never be a substitute for a motion to withdraw a plea." 373 So. 2d at 902. If we were to recognize or

create a fundamental-error exception in this case, we would be contradicting ourselves.

Second, a fundamental-error exception would be inconsistent with this Court's precedent interpreting the 1996 Act. In *Leonard v. State*, 760 So. 2d 114, 116-17 (Fla. 2000), we held that the 1996 Act itself codified existing law as embodied in *Robinson*. We did that even though the text of the 1996 Act says that a defendant who pleads guilty or nolo contendere without reservation "may not appeal the judgment or sentence." § 924.051(4), Fla. Stat. (2020). We reasoned that it was necessary to read *Robinson* into the statute to avoid potential constitutional concerns. *Leonard*, 760 So. 2d at 118.

Given this Court's construction of the 1996 Act, it is important that we adhere to *Robinson*, including what it said about the need to file a motion to withdraw plea. The 1996 Act expressly says:

> It is the intent of the Legislature that all terms and conditions of direct appeal and collateral review be strictly enforced, including the application of procedural bars, to ensure that all claims of error are raised and resolved at the first opportunity. It is also the Legislature's intent that all procedural bars to direct appeal and collateral review be fully enforced by the courts of this state.

§ 924.051(8), Fla. Stat. (Supp. 1996). Having committed ourselves to the position that the Legislature adopted the 1996 Act against the backdrop of *Robinson,* and indeed that the 1996 Act incorporates *Robinson,* we cannot pick and choose which aspects of *Robinson* to follow. We must honor the legislative mandate.

Third, a fundamental-error exception would be inconsistent with the underlying logic of *Robinson* and of the rule itself. For an error to be considered "fundamental error," it is generally necessary (though not sufficient) that the error be of constitutional dimension. *Jackson,* 983 So. 2d at 575. But every meritorious claim of an involuntary plea involves constitutional error. "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Bolware v. State*, 995 So. 2d 268, 272 (Fla. 2008) (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).

In this context, then, a fundamental-error exception would produce one of two outcomes. Either the "exception" would swallow the rule; or the appellate courts of this state would need to develop a set of standards—unavoidably unpredictable in application—to distinguish "fundamentally erroneous" involuntary pleas from "non-

fundamentally erroneous" involuntary pleas. Neither outcome is acceptable.

Fourth, given the overall framework of the relevant rules of procedure, a fundamental-error exception is simply unwarranted. At the same time this Court codified *Robinson* in rule 9.140(b)(2)(A)(ii)(c), we took care to facilitate defendants' compliance with the rule's preservation requirement. Specifically, we adopted Rule of Criminal Procedure 3.170(*l*) to give defendants 30 days after the rendition of sentence to file a motion to withdraw plea. That makes the deadline for filing a motion to withdraw plea concurrent with the deadline for filing a notice of appeal. We also coupled our adoption of rule 9.140(b)(2)(A)(ii)(c) with an amendment to Rule of Appellate Procedure 9.020(h), "to provide that a motion to withdraw the plea after sentencing will postpone rendition until its disposition." *1996 Amendments*, 696 So. 2d at 1106. We said we were making these changes to be "[c]onsistent with the legislature's philosophy of attempting to resolve more issues at the trial court level." *Id.* at 1105. In light of the structure of these interlocking rules of procedure, there is no justification for a fundamental-error exception to rule 9.140(b)(2)(A)(ii)(c).

Finally, Dortch's case proves the wisdom of requiring involuntary plea claims to be addressed in the first instance by the trial court, relatively close in time to the plea hearing. If the trial court made a mistake here, it was easily correctable. A timely-filed motion to withdraw plea would have allowed the parties and the trial court to promptly clean up the messy record in this case and to conduct any necessary competency proceedings. Instead, because Dortch chose to ignore the governing rules of procedure, the Fourth District found itself years after the fact asking the trial court to reconstruct a record of Dortch's competence at the time of his plea.

## III.

Dortch makes several arguments in support of the Fourth District's decision, none of them persuasive.

First, Dortch points to Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(e), a catchall provision that allows direct appeals from unreserved pleas "as otherwise provided by law." As we have explained, there is no law that authorizes Dortch's direct appeal in these circumstances. And in any event, we would not strain to apply this catchall provision to an appeal that is covered by one of

the circumstances (an involuntary plea) specifically listed in rule 9.140(b)(2)(A).

Second, Dortch invokes this Court's decision in *State v. T.G.*, 800 So. 2d 204 (Fla. 2001). In *T.G.*, we applied the fundamental error doctrine to allow a direct appeal by a juvenile who, without counsel, had pleaded guilty to felony charges. *Id.* at 212. We concluded that T.G.'s plea was involuntary as a matter of law because the trial court had not complied with the procedures governing a juvenile's waiver of counsel. *Id.* at 213. As to preservation, we acknowledged that *Robinson* and the applicable rules of procedure required T.G. to have first filed a motion to withdraw plea. But out of a "unique concern for juveniles who enter pleas without the benefit of counsel," we found it "appropriate to recognize a narrowly drawn and extremely limited exception to *Robinson*." *Id.*

Our opinion went on to say: "We again emphasize that in all other cases involving a challenge to the voluntariness of the plea, including those cases where the appellate court cannot determine the voluntariness of the waiver from the face of the record, the procedure of *Robinson* should be followed." *Id.*

*T.G.* is easily distinguishable—Dortch is not a minor, he *did* have counsel when he entered his plea, and our decision in *T.G.* did not consider the statutory limitations on our authority in this area. But on an even more basic level, without receding from *T.G.*, we reject its approach to creating ad hoc exceptions to rule 9.140(b)(2)(A)(ii)(c). Dortch's appeal—and the Fourth District's decision—prove that no matter how emphatically a court stresses that its reasoning is good-for-one-case-only, every exception begets demands for more. We think it best to follow the text of rule 9.140(b)(2)(A)(ii)(c) and to heed our own admonition from *T.G.*

Third, Dortch argues that we should not apply the preservation requirement here because "unlike most challenges to the voluntariness of a plea, trial courts are responsible for the underlying error." Again, we disagree. Beyond the problem of asking us to create an ad hoc exception to the rule, this argument is based on a flawed premise.

The acceptance of pleas is governed by Rule of Criminal Procedure 3.172, which "provides basic procedures to ensure that a defendant's rights are fully protected when he or she enters a plea to a criminal charge." *Griffin v. State*, 114 So. 3d 890, 900 (Fla.

2013). Like rule 3.210, rule 3.172 is animated by due process concerns. Also like rule 3.210, rule 3.172 imposes obligations directly on trial courts.

Rule 3.172(a) makes it the trial judge's responsibility to determine that a plea is voluntary. To that end, rule 3.172 requires the trial court to question the defendant about the nature of the charge, the defendant's right to representation, the right to trial by jury and attendant rights, the effect of a plea, the terms of any plea agreement, any deportation consequences resulting from the plea, and other matters. Thus, in the context of appeals from potentially involuntary pleas, confining a fundamental-error exception to judge-caused errors would not be a limiting principle.

Finally, Dortch argues that applying the rule's preservation requirement in these circumstances would be unjust. Dortch worries that a potentially incompetent defendant would be left to pursue postconviction relief without the assistance of counsel. We are not unsympathetic to this concern.

However, this argument does not supply a reason why we would be authorized to depart from the governing law as we have explained it. And even if our discretion were unbridled, we would

have to consider the positive ends that rule 9.140(b)(2)(A)(ii)(c) serves, not just the potential consequences to an individual defendant who does not comply with the rule. Faithfully applied, the rule brings clarity and finality. It allows errors to be corrected promptly and efficiently—a benefit not just to the criminal justice system overall, but to defendants themselves. And the rule is fair, particularly because the accompanying rule on motions to withdraw a plea gives defendants ample opportunity to seek relief from error before pursuing an appeal. Here we note that Dortch does not dispute that he would have been entitled to the assistance of counsel in filing a motion to withdraw his plea.

To create an ad hoc exception in this case would contradict governing law, spawn even more exceptions, and breed uncertainty. We decline that invitation.

## IV.

We hold that there is no fundamental-error exception to the preservation requirement of rule 9.140(b)(2)(A)(ii)(c). Accordingly, we do not reach the question whether the trial court in this case committed error. Nor do we express any view on the claims that will be available to Dortch if he seeks collateral relief. We quash the

decision under review and remand with instructions to affirm

Dortch's convictions and sentences.

It is so ordered.

CANADY, C.J., and COURIEL and GROSSHANS, JJ., concur.
LAWSON, J., dissents with an opinion, in which POLSTON and
LABARGA, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION
AND, IF FILED, DETERMINED.

LAWSON, J., dissenting.

I agree with the majority that issues relating to a criminal

defendant's competency are subsumed within the larger topic of the

voluntariness of the plea and are therefore expressly subject to the

preservation requirement of Florida Rule of Appellate Procedure

9.140(B)(2)(A)(ii)c. However, because due process dictates that we

recognize a fundamental-error exception to this rule, I would

approve the Fourth District Court of Appeal's unanimous en banc

opinion, which reversed and remanded to the trial court for further

proceedings with the following instructions:

> The trial court may determine the defendant's
> competence nunc pro tunc if possible. If the trial court
> cannot do so, the judgement and sentence should be
> vacated and the case set for trial.

*Dortch v. State*, 242 So. 3d 431, 433 (Fla. 4th DCA 2018) (citation

omitted).

I analyze the issue as follows:

## ANALYSIS

### I.  The trial court's failure to follow Florida Rule of Criminal Procedure 3.210 violated Dortch's constitutional right to procedural due process.

It is first important to recognize that Dortch suffered the

deprivation of a fundamental constitutional right in the trial court.

This occurred when the trial court found a reasonable basis to

question Dortch's competency[7] and yet accepted Dortch's guilty

plea without holding a competency hearing as required by *Pate v.

Robinson*, 383 U.S. 375, 378, 385-86 (1966) (holding that due

process[8] requires that (1) a trial court must hold a competency

---

7.  The trial judge granted defense counsel's motion "to determine the mental condition of the defendant" and appointed a doctor to examine Dortch for the purpose of determining Dortch's competency to proceed.  The trial judge made this determination in reliance on defense counsel's representation in a motion that he made the motion "in good faith and on reasonable grounds to believe that the Defendant is incompetent to proceed."

8.  *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process

- 30 -

hearing where the record reflects a bona fide doubt as to defendant's competence; and (2) that a state's "procedures must be adequate to protect this right").[9]

*Pate* establishes that where the record reflects a bona fide doubt as to a defendant's competency, the trial judge must hold a hearing before proceeding to any material stage of the criminal proceeding. *Pate*, 383 U.S. at 385-86. It also holds that Florida's procedures "must be adequate to protect this right." *Id.* at 378. Rule 3.210 was promulgated to implement this procedural right and expressly mandates that courts follow through with a competency determination, before conducting any material stage of the criminal proceeding, after finding a reasonable basis to question a defendant's competency. *See* Fla. R. Crim. P. 3.210(b) ("If, at any material stage of a criminal proceeding, the court of its own motion,

_____

of law . . . ."). Florida's constitution also affords each person the same protection. Art. I, § 9, Fla. Const.

9. The majority rightly recognizes that Dortch's claim is not a substantive claim of incompetency but rather a claim that the trial court denied him adequate procedures to protect his right not to be tried while incompetent. Majority op. at 9; *see Pate*, 383 U.S. at 378-85.

or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion . . . .").

Although trial courts have discretion in determining whether reasonable grounds exist to believe a defendant to be incompetent, *Rodgers v. State*, 3 So. 3d 1127, 1132 (Fla. 2009), they do not have discretion to determine that reasonable grounds exist and then proceed to a material stage of the proceeding without making the required competency determination. *Dougherty v. State*, 149 So. 3d 672, 676 (Fla. 2014) ("Indeed, it is necessary for courts to observe the specific hearing requirements set forth in [rules 3.210-3.212] in order to safeguard a defendant's due process right to a fair trial and to provide the reviewing court with an adequate record on appeal.").

Therefore, rule 3.210 is tightly aligned with the due process clause, as construed in *Pate,* to assure procedural due process for potentially incompetent criminal defendants. Because of this tight alignment—both require the same hearing under the same

circumstance—a violation of the rule also constitutes a procedural due process violation under *Pate*.

That this violation occurred in Dortch's case is not in question. The question is whether Dortch can seek relief on appeal. In my view, rule 3.210 and the due process right it was adopted to protect are meaningless unless they can be enforced.

## II. The Florida Constitution guarantees Dortch the right to a meaningful appeal.

Article V, section 4(b) of the Florida Constitution provides in pertinent part that "[d]istrict courts of appeal shall have jurisdiction to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts . . . not directly appealable to the supreme court or a circuit court." We have interpreted this provision as affording criminal defendants a constitutional right to an appeal. *See McFadden v. State*, 177 So. 3d 562, 566 (Fla. 2015) ("Article V, section 4(b) [of the Florida Constitution], grants the district courts jurisdiction to hear criminal appeals and affords criminal defendants a constitutional right to an appeal."); *Harriel v. State*, 710 So. 2d 102, 103 (Fla. 4th DCA 1998) ("While our supreme court has recognized that criminal defendants have no

- 33 -

federal constitutional right to a direct appeal, under article V, section 4(b) of the Florida Constitution, there is constitutional protection of the right to appeal.") (citations omitted). The Legislature—and our rules of procedure—may place reasonable conditions upon this right "so long as they do not thwart the litigants' legitimate appellate rights." *Amends. to the Fla. Rules of App. Proc.*, 696 So. 2d 1103, 1104 (Fla. 1996).

In addition to this limitation, by affording criminal defendants a constitutional right to an appeal, the procedures used in deciding direct appeals in Florida's courts must comport with due process. *See Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (explaining that although the United States Constitution "does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors," if a State creates such a right, "the procedures used in deciding appeals must comport with the demands of the Due Process . . . Clause[] of the Constitution").

Accordingly, a criminal defendant's due process right to a direct appeal, as secured by Florida's constitution, requires that a defendant who is being deprived of freedom as punishment for illegal conduct have a meaningful appeal during which any

conviction secured through deprivation of a fundamental right can be set aside and revisited in the trial court.

### III.  Applying rule 9.140(b)(2)(A)(ii)c.'s "preservation requirement" would deny Dortch a meaningful appeal such that, to satisfy due process on appeal, a fundamental-error exception must be recognized.

In this case, Dortch's own trial counsel invited the due process violation by asserting a bona fide basis to question Dortch's competency, securing the trial court's finding adopting the assertion, asking that a hearing not be set at the time of the finding, and then scheduling the plea without first addressing Dortch's competency with the trial court.  Both common sense and a fair reading of *Pate* dictate that the trial counsel's actions in assuring the due process violation cannot at the same time cause waiver of the issue on appeal.

Common sense also dictates that it would not "comport with the demands of the Due Process . . . Clause[]," *Lucey*, 469 U.S. at 393, to apply rule 9.140(b)(2)(A)(ii)c. as written, in this unique context, because it would require a potentially incompetent defendant to file his own pro se motion to withdraw plea to "preserve" the issue.  It should not require legal training to

recognize the fundamental unfairness of a rule that would require independent action by a potentially incompetent criminal defendant before appointed appellate counsel can vindicate a clear violation of the procedure constitutionally required to assure that the defendant was competent to enter his plea in the first instance. Although important constitutional rights may be waived, *see* majority op. at 13 (noting Dortch's apparent waiver of rule 3.210(b)'s required hearing within twenty days), an incompetent defendant cannot do so.

## IV.  It is irrelevant to the analysis that Dortch appeared competent at the plea colloquy.

It is apparent from this record that Dortch was very likely competent at the time he entered his plea. One might therefore naturally see no problem with enforcing the preservation requirement in this case—where it seems very likely that the trial court would be able to make a nunc pro tunc finding of competency such that the plea would still stand; no harm, no foul. However, *Pate* also involved a defendant represented by counsel who appeared competent during colloquies with the trial judge. Those colloquies occurred at a different material stage of the proceeding

(during trial for Pate versus during a plea for Dortch). However, that factual difference is immaterial. *See Godinez v. Moran*, 509 U.S. 389, 391 (1993) (holding that the competency standard for pleading guilty is the same as the competency standard for standing trial). Because it is the procedural deprivation itself that constitutes the constitutional violation, *Pate* properly held that the procedural deprivation warranted a reversal, even though Pate appeared competent at trial.

Therefore, in this case, irrespective of whether it appears that Dortch was fully competent, rule 3.210 does not allow counsel to represent that his client is likely incompetent and then waive the hearing requirement.[10] Nor does it allow a trial judge to order an

_____

10. By contrast, Florida Rule of Criminal Procedure 3.216 allows private counsel appointed or retained to represent a defendant adjudicated to be indigent or partially indigent and who "has reason to believe that the defendant *may be* incompetent to proceed," Fla. R. Crim. P. 3.216(a) (emphasis added), to request appointment of a single expert to evaluate the defendant and "report only to the attorney for the defendant," *id.* Rule 3.216 then leaves it to defense counsel to raise the issue of competency with the trial court after receiving results from the confidential evaluation, if there is a basis to do so. *Id.*; *see Crosby v. State*, 175 So. 3d 382, 383 (Fla. 5th DCA 2015) (explaining that trial courts are not required to hold competency hearings after appointment of an expert pursuant to rule 3.216 and "unless the defendant's attorney decides to actually raise the defense of insanity or assert

evaluation without setting a competency hearing.  Whether Dortch

was competent or incompetent at the time of his plea is irrelevant to

the legal issue presented.  Rather, to vindicate his due process

right, as required by *Pate*, we must recognize a fundamental-error

exception to the preservation requirement as held by the Fourth

District.

## V.  Recognizing a fundamental-error exception here is also consistent with our case law recognizing a similar exception in a comparable case.

Our decision in *State v. T.G.*, 800 So. 2d 204 (Fla. 2001),

further underscores that a fundamental-error exception must

apply.  In *T.G.*, we recognized an exception to a similar preservation

requirement for cases in which the record reflects that the trial

court failed to follow the procedural rule designed to assure that

---

incompetence to proceed, no further proceeding regarding the defendant's mental status is required by rule 3.216").  The motion in this case cannot be fairly understood as a motion pursuant to rule 3.216 because the motion states that it is made pursuant to rule 3.210 and because counsel asserted a good faith basis for believing that Dortch was actually incompetent, consistent with rule 3.210, and not simply that Dortch "may be incompetent," as required when seeking appointment of an expert pursuant to rule 3.216.  In addition, although Dortch had been adjudicated to be indigent, he was not represented by an appointed private counsel.

- 38 -

waivers of counsel are made freely and voluntarily before accepting

the plea.  *Id.* at 211-12.  We reasoned as follows:

> Because of this unique concern for juveniles who enter pleas without the benefit of counsel, we find that it is appropriate to recognize a narrowly drawn and extremely limited exception [to the general preservation requirement in this context].  "Fundamental error" occurs in instances when juveniles enter uncounseled pleas where the trial court failed to comply with the requirements of rule 8.165.  In these circumstances if the waiver of counsel is invalid as a matter of law, it follows that the guilty plea entered without advice of counsel should also be deemed involuntary as a matter of law. Thus, if it appears from the face of the record that the trial court did not comply with the specific procedures of rule 8.165, including conducting a "thorough inquiry into the child's comprehension of that offer [of the assistance of counsel] and the capacity to make that choice intelligently and understandingly," any subsequent plea should be deemed involuntary as a matter of law and the appellate court would have the authority to reverse absent a motion to withdraw or a contemporaneous objection.

*Id.* at 213 (second alteration in original).

Similarly, there are unique concerns related to individuals

whose competence is called into question and procedural rules that

judges must follow to protect defendants' constitutional rights when

these concerns are present.  "While not all errors of constitutional

magnitude constitute fundamental error," *id.* at 212, an error in

failing to hold a due-process-required competency hearing before

accepting a plea "goes to the foundation of the case," *Jaimes v. State*, 51 So. 3d 445, 448 (Fla. 2010) (quoting *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970)), because it constitutes a denial of the very process that Florida has implemented to assure that defendants have the mental capacity to understand the proceedings against them after their competence is reasonably questioned by the court.

The majority's rejection of the approach we took in *T.G.* because "every exception begets demands for more," majority op. at 25-26, misses the point.[11]  *Pate* appropriately placed the burden on trial judges to protect a defendant whose competence a judge has reason to question.  *Pate*, 383 U.S. at 385; *see also id.* at 388 (Harlan, J., dissenting) (agreeing with the general proposition that when a defendant's incompetence has become "sufficiently manifest," it "denies [a defendant] due process for the trial court to

---

11.  Contrary to the majority's assertion that allowing Dortch's claim to be heard on direct appeal would "spawn even more exceptions . . . and breed uncertainty," majority op. at 28, an exception would only be necessary in the rare case where, as here, the record reflects a bona fide question as to the defendant's competence.

fail to conduct a hearing on that question *on its own initiative*")
(emphasis added). Accordingly, appellate counsel should be able to
seek relief on appeal when a trial judge does not fulfill his obligation
to hold a required competency hearing.

I also disagree with the majority's conclusion that a
fundamental-error exception is unwarranted here "given the overall
framework of the relevant rules of procedure." Majority op. at 22.
Enacting a rule similar to Florida Rule of Criminal Procedure
3.800(b)(2), the rule discussed by the majority, would allow trial
courts to address noncompliance with rule 3.210 while protecting
the due process rights of defendants who lack the mental capacity
to enter a plea. Rule 3.800(b)(2) allows appellate counsel to file a
motion to correct a sentencing error in the trial court after trial
counsel files a notice of appeal. Appellate counsel must serve the
motion in the trial court "before the party's first brief is served," and
counsel is also required to file a "notice of pending motion to correct
sentencing error . . . in the appellate court, which notice
automatically shall extend the time for the filing of the brief until 10
days after the clerk of circuit court transmits the supplemental

record" of the proceedings on the motion to correct sentencing error. Fla. R. Crim. P. 3.800(b)(2).

It is only because rule 3.800(b)(2) gives appellate counsel the tools needed to have sentencing errors corrected by the trial court—during the appeal—that we can preclude raising a fundamental sentencing error in the initial brief, as we did in *Jackson v. State*, 983 So. 2d 562 (Fla. 2008), and still comply with a defendant's due process right to a meaningful appeal.

Of course, Dortch's appellate counsel did not have the benefit of a rule such as 3.800(b)(2), and where, as in Dortch's case, there is a bona fide issue of the defendant's mental competency apparent on the face of the record, it is wholly inadequate, and violative of due process, to bar appellate counsel from raising, on direct appeal, the trial court's failure to comply with rule 3.210. Such a bar leaves the potentially incompetent defendant to seek relief years later, without the benefit of counsel, after suffering a prolonged deprivation of liberty.

Moreover, if incompetent, the defendant would be extraordinarily unlikely to vindicate the due process violation suffered, particularly in light of our precedent requiring claims

regarding competency to be raised on direct appeal. *See Nelson v. State*, 43 So. 3d 20, 33 (Fla. 2010) (explaining that the defendant's claim that he was tried and convicted while mentally incompetent was "procedurally barred because he failed to raise it on direct appeal").

Therefore, the majority's decision leaves potentially incompetent defendants like Dortch with no effective remedy.

**CONCLUSION**

Today's decision renders our procedures effectively inadequate to protect the due process right recognized in *Pate* by barring appellate counsel from seeking relief on appeal where the trial court does not fulfill its obligation under rule 3.210 to hold a required competency hearing, proceeds to accept a plea, and the potentially incompetent defendant does not move to withdraw the plea. While it appears from the record that Dortch did possess the necessary mental capacity to enter his plea voluntarily, that satisfies neither the procedural requirements of rule 3.210 nor the constitutional right that the rule is designed to protect. For these reasons, I would approve the Fourth District's decision and its remand instructions.

POLSTON and LABARGA, JJ., concur.

- 43 -

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fourth District - Case Nos. 4D16-2815 and 4D16-2816

(Okeechobee County)

Ashley Moody, Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and Joseph D. Coronato, Jr., Assistant Attorney General, West Palm Beach, Florida,

for Petitioner

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

for Respondent